JASPER STRONG, APPELLANT, vs. GEORGE WILLIS, ET AL., APPELLEES.

A trustee cannot renounce, after having accepted the trust, but must execute the provisions of the trust deed.

A deed of trust conveying property to trustees, for the sole and separate use of the grantor's wife and children, free from the debts of the grantor, secures the property so conveyed against the debts and claims of the trustees executing the deed, and accepting the trust.  A trustee executing such a deed and accepting the trust, cannot assail it as fraudulent, and subject the property to the payment of a debt due to himself from the grantor.  An attempt to do so is a breach of trust—he cannot be both trustee and assailant of the trust deed.

Jasper Strong filed his bill in the Circuit Court of Escambia County, against George Willis, Mary B. Dallas, Alexander J. Dallas, Jr., Byrd C. Dallas and Henrietta C. Dallas, alleging and setting forth—That, in the summer of the year 1838, he entered into a verbal contract with Alexander J. Dallas, since deceased, whereby it was agreed that he should erect and finish a dwelling house for the

said Dallas on lot number 276, in the City of Pensacola ; that he should keep an account of the expense of the work and materials furnished, and that said Dallas should pay him for the same, upon the completion thereof; that this contract and agreement were fully executed on his (complainant's) part, at an expense of upwards of six thousand dollars ; that, on the thirty-first day of December, 1838, a deed of trust was executed by the said Dallas, in behalf of his wife, Mary B. Dallas, and his children, the said Alexander J. Dallas, Jr., Byrd C. Dallas and Henrietta J. Dallas, whereby the said lot and building and other property were conveyed to complainant and G. Willis, (who is made a party defendant,) for the use and benefit of the said wife and children of Alexander J. Dallas ; that complainant executed the deed and accepted the trust, but with no intention on his part to surrender any legal or equitable right which he might have to enforce against the property of the said Dallas the payment of his debt ; that Alexander J. Dallas died in the year 1844, the debt to the complainant being due and unpaid, and that Mary B. Dallas, his widow administered upon his estate ; that, in the year 1847, complainant obtained a judgment against the administratrix for the sum of four thousand one hundred and seventy-five dollars and 98-100, being the amount due him under the contract and agreement before referred to ; that the execution issued on the judgment aforesaid was levied on the lot No. 276, in the City of Pensacola, there being no personal property of the intestate in the hands of the administratrix to be administered, and no lands or tenements not conveyed by said deed of trust.

The bill then charges that the settlement attempted to be made by said deed was made upon the said wife of the intestate after marriage ; and that with reference to all the beneficiaries under the said trust, it was purely voluntary and without valuable consideration ; and that the complainant is not barred or precluded from the payment of the debt due to him from the said Dallas, by reason of his having been a party to the said deed of trust.

The specific relief prayed for is, that the property levied on may be sold for the satisfaction and payment of the judgment at law, and that defendants be perpetually enjoined from setting up any claim to said property.

The following is the deed of trust referred to in complainant's bill, and prayed to be taken and considered as a part thereof:—

This indenture tripartite between Alexander J. Dallas of the first part, George Willis and Jasper Strong, their heirs, executors and administrators, of the second part, Mary Byrd Dallas, wife of Alexander J. Dallas, and Alexander James Dallas, Jr., Byrd C. Dallas, and Henrietta Constantia Dallas, children of the said Alexander J. Dallas : That is to say, Alexander James Dallas, Jr., by his former wife, and Byrd C. Dallas and Henrietta Constantia Dallas, by his present wife, Mary Byrd Dallas : Whereas, the said Alexander J. Dallas is desirous of providing more effectually for the support and maintenance of his said wife Mary Byrd, and his said children : Now this indenture witnesseth, that the said Alexander J. Dallas, for and in consideration of the premises, and for and in consideration of the natural love and affection which he hath and beareth towards his said children, Alexander James, Byrd C., and Henrietta Con stantia, and for the purpose of providing more effectually for the support and maintenance of his wife, Mary Byrd, during her life, and for and in consideration of the sum of ten dollars to him in hand paid by the said George Willis and Jasper Strong, the receipt of which is hereby acknowledged, he, the said Alexander J. Dallas, hath given, granted, bargained, and sold, aliened, enfeoffed, conveyed, and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, convey and confirm, unto the said George Willis and Jasper Strong, their heirs, executors, and administrators, the following pieces, parcels, or tracts of land, situated and bounded as follows, to wit : a certain lot or parcel of land, situate, lying and being in the city of Pensacola, and known on the plan of the said city as number two hundred and seventy-six, (276,) containing eighty feet front on Intendencia street, by one hundred and seventy in depth. Also the following tracts of land, lying, situate, and being in the county of Escambia and Territory of Florida, viz : Fractional section twenty-nine, (29,) of township two, (2) range thirty, South and West, containing thirty-eight acres and fifty hundredths of an acre. Also, Fractional section twenty-seven, (27) township two, (2) range thirty, (30) South and West, containing one hundred and nine acres. The aforesaid lands being in the district of lands subject to sale at Tallahassee, Florida. Also, a certain lot situated on Intendencia street in the city of Pensacola, and known and distinguished in the plan of the said city by the numbers or figures two hun-

dred and seventy-five (275,) containing eighty feet front on Intendencia street, and one hundred and seventy feet in depth. Also, the following negro slaves, to wit : A certain negro woman named Fanny and her future increase. Also, Lydia and her future increase. Also, a certain negro woman named Betsey, together with her future increase.

To have and to hold, the aforesaid pieces, parcels or tracts of land, together with their improvements and appurtenances, and also, the negro slaves aforesaid, with their future increase, unto the said George Willis and Jasper Strong, their executors and administrators. In trust, nevertheless, to, and for the following uses, intents and purposes, and to and for no other use, intent or purpose whatsoever : That is to say, in trust to and for the sole and separate use, benefit and behoof of the said Mary Byrd, wife of the said Alexander J. Dallas, and the said children, Alexander James Dallas, Jr., Byrd C. Dallas, and Henrietta Constantia Dallas, free and exempt from the debts, contracts, and incumbrances of the said Alexander J. Dallas, free and exempt from any control, right, title, interest or property on the part of the said Alexander J. Dallas, of, in and to the same or the rents, issues, or increase or profits thereof, but the said several pieces, tracts or parcels of land, together with the improvements, rents, issues, and profits thereof, as well also the several negro slaves aforesaid, together with their future increase, profits and issues, to be and remain to the sole and separate use, benefit, and behoof of the said Mary Byrd, wife of the said Alexander J. Dallas, and the said children, Alexander James Dallas, Jr., Byrd C. Dallas, and Henrietta Constantia Dallas, and to be used and appropriated in manner and form as hereinafter prescribed, to wit : The rents, issues, and profits of the said several tracts, pieces or parcels of land, together with their appurtenances ; also, the said several slaves, their future increase as aforesaid, shall be appropriated in equal proportions to the support and maintenance of the said Mary Byrd, and the said children, Alexander James Dallas, Jr., Byrd C. Dallas, and Henrietta Constantia Dallas, for and during the life of the said Mary Byrd ; and after the death of the said Mary Byrd, the said several tracts of land and the said negro slaves shall be equally divided between the said Alexander James Dallas, Jr., Byrd C. Dallas, and Henrietta Constantia Dallas. But the said Mary Byrd, wife

of the said Alexander J. Dallas, shall have her elections to use, occupy and enjoy any one of the aforesaid several pieces or parcels of land with its improvements, also any one of the several slaves aforesaid with her future increase, as an equivalent for her proportion of interest, or profit under this deed, although it may exceed in value and profits her rateable portion under this deed ; and in the event of such an election being made by her, and exceeding the rents, issues, increase, and profits, then the remainder of the property shall be equally divided between the said children, Alexander James Dallas, Jr., Byrd C., and Henrietta Constantia, but should such a selection fall short in value of her third or proportion of the rents, issues, increase or profits, the said Trustees shall make good the deficit.

In witness whereof, the parties to these presents have hereto set their hands and seals at Pensacola, this 31st day of December, in the year of our Lord one thousand eight hundred and thirty-eight.

A. J. DALLAS,   [Seal.]
GEO. WILLIS,   [Seal.]
JASPER STRONG, [Seal.]

To this bill the defendant's filed a demurrer.

At the Fall Term, 1849, of the Circuit Court of Escambia County, Hon. GEORGE S. HAWKINS, Judge of the Western Circuit, presiding, this cause having been by consent set down for final hearing, and having been heard on the bill and demurrer, it was decreed by the Court that the demurrer be sustained, and that the bill of complainant be dismissed for want of equity, and that complainant pay all costs, &c.

From this decree, the complainant prayed an appeal to the Supreme Court, and it was granted him.

*B. D. Wright,* for appellant :

In this case, the bill and demurrer present the following facts :

1st. In 1838, Alexander J. Dallas, deceased, employed Strong, the complainant, to build him a dwelling house in Pensacola. This Strong did, at large expense to himself, receiving from Dallas but a small sum in part payment.

2d. In 1839, Dallas executed a deed of trust to George Willis and the complainant, whereby he conveyed to them the lot whereon said

house was built, and all his other property, in trust for Mary B. Dallas, his wife and his three children.

3d. That said deed of trust had no other consideration but the love and affection of the said Dallas for his said wife and children.

4th. That suit at law was afterwards brought against the administratrix of Dallas, and a judgment was recovered against her as such, by the said Strong, for the sum of $          , the balance due to Strong, upon the contract for building the house.

5th. That execution issued on the judgment, and was levied on the house and lot in question—no other property of the intestate being found.

The object of the bill is to relieve the property of the pretended title growing out of the deed of trust, so that the same may be sold for the satisfaction of the judgment.

The only question in the case is, whether the deed of trust is available, as against the pre-existing debt of the complainant. And this depends upon the question whether the complainant's being a party to the deed of trust destroys, or otherwise affects his rights as a creditor.

A careful comparison of our statute with that of 13th Elizabeth, will show that the two statutes are identical in principle, and nearly so in terms. These statutes strike directly at all voluntary conveyances, and instead of requiring proof of the intent to defraud, (as was, to a certain extent, requisite at common law,) they infer the intent (as against pre-existing debts) from the voluntary nature of the conveyance. The common law opposed itself to actual fraud in all aspects ; but the common law was not adequate to the preservation of the rights of creditors and purchasers ; and so the statute has set up certain *indicia* of fraud ; thus making it a question of law, rather than of fact. 7th Cowen, 304. 9th John. Rep., 342. Roberts on Fraudulent Conveyances, 83, 450, 451.

In the case of such conveyance, when the person making it is indebted at the time, the conveyance is void *ipso facto ;* in case of *subsequent* indebtedness, (or a subsequent conveyance,) such voluntary conveyance is void by relation merely. In the earlier cases decided under 13th Elizabeth, some contrariety of opinion seems to have prevailed, as to the effect of *family settlements* upon the right of *subsequent* creditors, (the party making such settlements not being

17

indebted at the time.) 2nd Atkins, 13. 2d Ves., 10. 2nd At., 520.

But there never was a case since the passage of the 13th Elizabeth, where a merely voluntary conveyance was deemed good, as against the rights of a creditor existing at the time of the conveyance. 1 At., 94. 2d At., 600.

This is not denied on the other side, but it is contended that a distinct inquiry is here presented, by the complainant's being one of the trustees. Let us examine. At law and in equity, the property in question was responsible for the debt of complainant, as against any one claiming under a merely voluntary conveyance—that is to say, such conveyance was void as to this debt. Strong had a right so to consider it.

If, then, the conveyance was void as to Strong's debt, the accident of his being one of the trustees does not give it validity, unless it be upon the ground that *concealment* is, in such cases, a necessary *indicium* of fraud ; and so far is this from being the case, that even a *purchaser*, for valuable consideration, (under the 27th Elizabeth,) may treat a former voluntary conveyance as fraudulent, though he had full notice of such voluntary conveyance when he purchased.— 5 Co. Rep., 60. Cowper, 278. 4th Atkins, 412.

The language of the statute is, " for the intent and purpose of defrauding," &c. Some of the decided cases go to the length of establishing the principle, that the " intent and purpose" here denounced, may exist in the purchaser, as well as in the seller, and that even a conveyance, for an adequate valuable consideration, shall be deemed void, as against pre-existing debts, where it is ascertained that the purchaser knew of the intent to defraud. Strong's assenting, then, (for his being a party to the deed amounts to no more,) to this deed of trust, does not in the least affect the " intent" of the other party. This must be judged of by the effect of the conveyance, which certainly is to " hinder, delay and defraud."

Assuming that this conveyance, then, was void, on account of its being voluntary, there is no force whatever in the objection that Strong is one of the trustees. His being so, does not make the conveyance more or less voluntary. The only difficulty in the case grows out of the misuse of the word " fraudulent." It matters not though the most perfect good faith existed in a transaction of this

sort—still, if those badges of fraud (to wit, a voluntary conveyance and indebtedness at the time) be presented by the case, they are conclusive.

*W. Anderson,* for appellee :

The deed from Dallas to Strong and Willis, in trust for the wife and children of the grantor, is sought to be set aside by Strong as fraudulent upon the ground that Dallas was indebted to Strong at the time of its execution.

It is to be observed that Strong was himself a party to the deed, he having accepted the trust under his hand and seal.

As a voluntary conveyance is not fraudulent of itself, it is necessary to inquire whether under the circumstances of this case Dallas committed a fraud either actual or constructive on Strong. " The mere fact of indebtment at the time does not, *per se,* constitute a substantive fraud to avoid the voluntary conveyance even in regard to prior creditors—but the question whether it is fraudulent or not is to be ascertained from all the circumstances of the case—and if the circumstances do not establish fraud, then the voluntary conveyance is deemed above all exception." 1 Story's Eq., pp. 354–5.

Dallas, making the conveyance to Strong, of course proves no concealment was designed. Strong, accepting and ratifying the trust, waives all objection to the conveyance, and negatives any fraudulent intent on the part of Dallas.

If there was an absence of fraud, the deed cannot be set aside. 3 Desau, 1.

Strong is also estopped from denying the validity of this deed by being a voluntary party to it.

BALTZELL, J.

This is a suit in Chancery by the complainant, Strong, alleging indebtedness of the late Alexander J. Dallas, to an amount of nearly six thousand dollars, through a contract made in the summer of 1838, for the erection and finishing a dwelling house on lot 276, in the city of Pensacola. The bill alleges that in December of that year, a deed of trust was executed by the said Dallas in behalf of his wife and children, whereby the said lot and building and property were conveyed to complainant and the defendant, Willis, as trustees

for the use and benefit of the said wife and children. Complainant alleges that " he became a party to the deed of trust by accepting the trust, but with no intention on his part to surrender any legal or equitable right which he might have to enforce against the property of the said Dallas, the payment of his debt abovementioned, and set forth," and he asks for a sale of the trust property. The defendants demur to the bill, and raise the simple question whether it is competent for a party, after having by his signature, accepted the trusts of a deed, thus to complain of it as fraudulent. It is purely a question of law, and to be decided as if the facts presented by the bill had been admitted by the answer. The office of trustee, his duty, rights, powers, and obligations are now well ascertained and understood (having been declared by the Courts in such terms) as to create an exclusive branch of equity jurisprudence. Amongst the rules established, we recognize the following :—" The trustee holds the estate for the *cestui que trust*, and to effect the purposes and objects declared by the deed." He cannot renounce, after acceptance, but must execute its provisions. He is bound to convey, at the direction of his *cestui que trust*, and may be compelled by suit to fulfil any particular act of duty. If the estate is assailed, his duty is to protect it —he may be enjoined from committing a breach of trust, and his laches or tort shall not effect the *cestui que trust*. Bearing in mind then, these principles, let us examine the trust deed in the case under consideration, to ascertain the duties imposed and the trusts and covenants assumed by the trustees, and to see how far the individual right of one of them, as presented by this bill, may be consistent with them. The deed is in the usual form, and as a copy of it will be given by the reporter, we refer only to the material parts of it. The conveyance is declared to be in " trust for the sole and separate use, benefit and behoof of the sole and separate use of the wife and children, free and exempt from the debts, contracts and incumbrances of the said Alexander J. Dallas, free from any control, right, title interest or property of the said Dallas," and provides that the rents and profits of the lands, &c., shall be appropriated to the support and maintenance of the said wife and children." This, undoubtedly, is an express declaration on the part of Willis and Strong, the trustees signing the deed, that the property shall not be disposed of to pay the debts of the grantor, amongst which clearly would be embraced debts

due to the trustees as well as to any one else. The property is not only not to be subject to the debts of Dallas, the grantor, but the trustees engage that it shall be appropriated to the support of the family. If assailed by a stranger, the duty of such trustee would be to defend and protect the property, and he would be compelled to do so.

Does he occupy a more favorable position, as far as his own rights are concerned? Can he, who has undertaken by his solemn act to defend this property, and carry into effect its objects and purposes of express and specific character, be permitted himself to turn round, repudiate the trust, and defeat and destroy it?

If the design of complainant was, as he states it to have been in his bill, not to surrender any equitable or legal right which he might have to the property, he should have insisted upon a declaration to that effect, in the deed, and his neglect to do so, should be regarded as a waiver on his part. The deed is equivalent to a covenant or agreement on his part, that the property should be free from his own debt, as it undertakes to defend it generally against the debts, contracts and incumbrances of the grantor. Not a case has been exhibited to us in which a trustee has been permitted in a Court of Equity to occupy such an anomalous position; and to allow it, would be to assume a position directly in opposition to all the leading and governing principles and rules upon which this branch of equity has been constructed. This would, indeed, be giving judicial sanction to such a design.

One of the rules alluded to above is, that, in attempting an injury to the trust property, the trustee acts without warrant, and in breach of his duty. What more serious injury—what more intolerable breach of trust, than to assert a right in the trust property, for his own individual purposes?—to ask that property, which, by his own act, has been confided to his care, to guard and protect for the wife and children of the grantor, shall be sold and appropriated to his own use?

Another principle, common to this as well as to every other branch of the law, is, that a man should not be permitted to allege his own fraud. If decedent was in debt, so as to make this deed a fraud as to creditors, complainant did wrong in aiding and sanctioning the act. It cannot be regarded as a fraud as to himself—for by his free act, his solemn deed, he has consented, as he had a full right to do, that the property should not be subject to his debts, but that he would look to other means for payment.

The case of a purchaser, for a valuable consideration, with notice of a prior fraudulent sale, is not that of complainant.   As to him, such sale is in law a nullity, as if it never had been made.   It is not a matter to which he is committed, and with which he had any con-nection or concern.   It would be different, if such a purchaser had been pledged by solemn deed to sustain the very claim which he was asking leave of the Court to assail.

It may be a case of hardship for the complainant; but it is not .the province of the Courts nor of the law to compensate the defi-ciencies of parties, or repair the consequences attending their neg-lect or inattention.   If we mistake not, a law of the State provides a lien to mechanics, which might have been available to complainant— or he might, before undertaking the work, have required security— or, by declining the office of trustee, he might have occupied the po-sition of a creditor, so as to assert the defects or fraud in a deed or deeds made to his prejudice or injury; but he cannot be both trustee and assailant of the trust deed; he cannot be both maintainer and holder of the legal title, and the asserter of its invalidity..   For these reasons, we think the decree of the Court below must be affirmed, with costs.