# Harbin, Adm'r, *v.* Bell *et al.*

*Bill in Equity to call Guardian to Account, &c.*

1. *Guardian; when can not deny validity of appointment.*—One who has procured his own appointment as guardian, and as such received assets of the ward and made settlement in the probate court, can not deny the rightfulness of his appointment, or set up its invalidity, to defeat proceedings to call him to account.

2. *Same; when chargeable with value of Confederate currency, &c*—A guardian, who loaned Confederate money belonging to the ward's estate, during the war, without taking security, as required by law, is chargeable as for a conversion to his own use, and must account for its value at the time of such loan.

3. *Same; when entitled to credit for article not paid for.*—The ward, or his representative, can not defeat a credit in favor of the guardian, for the value of a horse furnished the ward, (the charge being otherwise proper,) because the guardian, who gave his own individual note for the price, had not paid it; as between the ward and the seller the debt is paid.

4. *Exception to register's report; when necessary.*—Where the chancellor, in a decretal order sustaining exceptions to the register's report, finds that certain items excepted to, were not proper charges, and directs the register to restate the account on that basis, a party seeking to revise such ruling, need not again except to the register's report, made in accordance with such directions, because it omits to charge such items. The error in such a case, if there be error, is the error of the chancellor and not of the register.

APPEAL from Montgomery Chancery Court.

Heard before Hon. ADAM C. FELDER.

Harbin, the appellant, filed this bill as administrator of J. V. Cloud, deceased, against O. R. Bell, guardian of his intestate, and one Daniel, surety upon his bond, to compel a settlement of the guardianship in the chancery court, and to charge him as for a *devastavit* for the collection of certain debts, due the ward, in Confederate money, and for general relief.

One Pool had formerly been guardian of complainant's intestate, but made final settlement in the probate court of Montgomery, on the 14th day of April, 1862, and resigned, having paid into court in Confederate currency the amount of the decree against him on that settlement, amounting to something over four thousand dollars. At the request of Pool, the ward, and his sister, Mrs. Bell, the appellee Bell procured the appointment as guardian, gave bond and duly

[Harbin, Adm'r, v. Bell et al.]

qualified in the same month. Bell received the Confederate money paid into court, and immediately loaned the greater part of it to Mrs. Bell, who desired him to become guardian that she might borrow the money, taking a note signed by her as executrix with one surety. She afterwards borrowed, some money belonging to the estate, giving only her individual note. Mrs. Bell died without having paid the money and without any effort having been made to collect it. In his answer, Bell set up in defense that his appointment during the war was invalid, and Pool was still the guardian, &c.. wherefore he contended he could not be called to account. Pool returned an inventory as guardian to the probate court in 1863, and also made a partial settlement that year, in which he charged himself with the Confederate money received.

The chancellor decreed that complainant was entitled to relief, and directed a reference to the register to ascertain and report whether anything was due complainant, and to state an account, &c. The register charged Bell with the Confederate money received, calculated what it was worth in gold, and charged him with that amount and interest thereon, and disallowed a credit claimed for the value of a horse furnished the ward in 1864, and after thus stating the account found that the balance due complainant was $4,457.77.

The evidence in relation to the horse showed that the ward was "conscripted" in the Confederate army in the year 1864, and the horse was bought after consultation with him and his relatives, to enable him to enter the cavalry, it being thought best for him to serve in that branch of the service, on account of his smallness in stature and his youth. For this horse the guardian, in 1864, gave his individual note, which had never been paid or sued upon.

Bell filed exceptions to the report, so far as it charged him with the amount of the Confederate currency loaned, and also because he was not allowed a credit for the horse. The chancellor being of opinion Bell was entitled to a credit for the value of the horse, and that the ward was not damnified by Pool's payment of the decree against him in Confederate currency, as it did not, in his opinion, discharge him, and as Bell had received no benefit from the money loaned, sustained the exceptions, and made a decree directing the register to restate the account in accordance with the decree. The register, upon the restatement, found that nothing was due upon the statement of the accounts as directed by the decree.

Exceptions not being filed to this second report, it was confirmed, and complainant taxed with the costs.

[Harbin, Adm'r, v. Bell et al.]

It is now assigned for error:

1st. That the court erred in sustaining the exceptions to the register's first report.

2d. That the court erred in the directions given the register in the decretal order sustaining the exceptions to said report.

3d. That the court erred in not decreeing in favor of complainant.

STONE & CLOPTON, for appellant.

WATTS & TROY, contra.

MANNING, J.—Appellee, O. R. Bell, having procured himself to be appointed guardian of James V. Cloud, a minor, and in that capacity received money of the said minor, and made returns thereof as guardian to the court, cannot, when sued by the administrator of the minor, exonerate himself from liability by alleging that he was not legally appointed guardian. He assumed the office, undertook to perform its duties, obtained by means thereof the money of Cloud, and must be held accountable, as other trustees, therefor.

Appellee received the funds of the ward in April, 1862, in "Confederate currency." And the administrator now seeks to make him liable for the value of those funds at the time they came to the guardian's hands, less any proper credits to which he may be entitled.

The guardian seems not to have made any profit to himself by the trust he assumed. All the Confederate money he received he immediately lent, except a part retained to supply the wants of his ward, to Mrs. E. L. Bell, a sister of the minor, and with whom he lived, and a sister-in-law of appellee, the guardian. Whether the minor, who died in 1864, had any other surviving relation who could take as distributee of his estate, does not appear. But Mrs. Bell is also dead, and the money lent to her was never collected. Nor was proper security taken from her for the re-payment, or reason shown why she should be allowed to retain it. The law expressly required that good security should be taken, when the money was lent, or that the money should be, in good faith, invested in real estate purchased for the ward.—Rev. Code, §§ 2426, 2437, et seq. Not having complied with the directions of the law," the guardian became liable for the money as taken or borrowed for his own use, and disposed of as his own. He is personally responsible for the money

at its value at the time when he so undertook to treat it as belonging to himself.

It is objected, however, that as no exceptions were taken to the second report of the register as master, it cannot be insisted in this court that the report was incorrect. This would be so if the error in disallowing to the complainant below the value of the Confederate currency, were the error of the master. But this is not so. In his first account he charged the guardian with it, and upon exceptions by appellees, the chancellor ruled that this was not correct, and referred the matter again to the master, with instructions that the guardian was not to be charged with that amount. It would have been a contempt on the part of the master to disregard these instructions, and might have been supposed to be hardly respectful, perhaps, in the counsel for appellants to have renewed the contestation before the chancellor, as they must have done, if they had excepted to the report for the same matter which he had already decided. At any rate, it was not necessary they should have done so.

We are of opinion that the guardian, Bell, should be credited with the value of the horse furnished to his ward when the latter was compelled, by conscription, to enter the Confederate army, and joined a cavalry company. Bell having become liable for the payment of the horse and given his note therefor, no question properly arises between him and the ward's administrator, whether the note was paid or not. The horse was paid for, so far as the latter was concerned. And while the guardian is not allowed by law to make a profit out of the ward by his dealings with the latter, and will not be allowed to charge him with more than an article is, under the circumstances, worth, although the guardian should give more than such value for it, the ward cannot be heard to object that his guardian has not paid the promissory note he had given for such article, if there was no fraud or bad faith toward, or imposition upon the ward.—See *Peter v. Beverly*, 10 Peters, 567.

The decree of the court below is reversed and the cause remanded, to be proceeded with according to the views expressed in this opinion.

STONE, J., not sitting.