SOPHIA G. SAUNDERS, BY HER NEXT FRIEND, ETC., ET. AL., APPELLANTS, VS. JOHN C. RICHARD ET AL., APPELLEES.

1. Under Circuit Court Rules in Equity No. 61, such courts have power upon motion, notice and cause shown, to permit amendments to be made to answers to bills in chancery, although such amendments may qualify or alter the original statements.

2. A trustee who is a party to a trust deed, who has accepted the trust, acted under the deed, taken possession of the property, the grantor raising no objection, can not for his own benefit surrender the trust deed and take a deed in his own name to the same property, to the injury of his *cestuis que trust*

3. A trustee who is a party to a trust deed, who has accepted the trust created by said deed with a knowledge of the consideration upon which the same was made, and by virtue of the same has taken and held possession of the trust property for a long period of years, in acquiescence to the provisions thereof, is, when a suit is brought against him to establish the trust and require him to account for the trust property, estopped from

maintaining as a defense to said suit that the trust deed was executed upon an illegal consideration, or that it was defectively executed.

4. If a party having the right to repudiate or affirm a transaction, affirms it, he can not afterwards resort to his right of repudiation. Impeachable transactions may be rendered valid by act of confirmation or acquiescence for a great length of time.

5. A trustee must assume the validity of the trust under which he acts until it is actually impeached. His duty is to manage the interests of his *cestui que trust*, and not to keep his conscience or betray his title or interest, and he can make no admissions prejudicial to the interests of his *cestui que trust*.

6. It is the duty of a party discovering a fraud to take immediate steps for a rescision of his contract. By his ratification of the acts of which he complains, and to which he was a willing party, he is forever estopped from setting up such defense.

7. A trustee who has accepted and entered upon the administration of a trust can not allege the invalidity of his appointment as a defense for not accounting for the trust property.

8. A trust deed was defectively executed—not being under seal. The grantor recognized the deed as valid and binding upon him, and as vesting a good title in the trustee, who, for a period of time longer than necessary to create a prescriptive title, remained in possession of the trust property: *Held,* That the trustee was not justifiable in surrendering the property or the written evidences of title thereto, to the grantor.

9. A trustee in the care and management of the trust estate is held to at least such degree of care, judgment and discretion as a man of ordinary prudence and capacity would exercise with regard to his own property.

10. Where a trustee has four *cestuis que trust,* one of whom is *sui juris,* and the others infants, the infants are not bound or concluded by any transaction between the trustee and the *cestui que trust* who is of age.

11. A trustee holds as much for the benefit and protection of those entitled to the estate in remainder, as of those to whom the immediate beneficial enjoyment is given.

12. The duties and obligations of trustees in the care and skill with which they should perform the duties assumed by them, prevent them from taking advantage of blunders and mistakes which they themselves have made, and which have misled their *cestuis que trust.*

13. The law looks with extreme jealousy upon all purchases of the trust estate by the trustee. Such purchases are always voidable upon proper proceedings taken by the *cestui que trust.*

14. One *cestui que trust* has no power to give away or dispose of the rights of another.

15. A trustee should not purchase the trust estate from his *cestui que trust.* The law regards with a jealous eye all transactions between persons occupying these confidential relations. As a general rule, a court of equity will avoid the contract altogether without proof of fraud, and will never sustain it except where the trustee clearly proves the fairness of such transaction, and that it was advantageous to the *cestui que trust.*

16. A transaction between trustee and *cestui que trust* will not be sustained if the trustee has taken advantage of any information received by him in such capacity, nor if the *cestui que trust* entered into the transaction in ignorance of his legal rights.

17. If a *cestui que trust* seeks to avoid a deed of the trust estate made by her to her trustee, she must account for any money received by her as a consideration for such deed.

18. Innocent purchasers for value of the trust property, without any notice or knowledge of the trust, can not be held liable therefor.

Appeal from the Circuit Court for Bradford county.

The facts of the case are stated in the opinion of the court.

*T hos. E. Bugg* and *A. W. Cockrell & Son,* for Appellants.

*L. B. Rhodes* and *Randall & Foster,* for Appellees.

LIDDON, J. :

The bill of complaint in this case alleged that the complainant, Sophia G. Saunders, was the wife of the defendant, William McQueen Saunders ; that the other complainants, except Joseph S. Wynns, who

was the husband of one of them, were the children of
said Sophia G. and the said defendant, William Mc
Queen Saunders.   A summary of the material allega-
tions of the bill is as follows : That the complainant,
Sophia G. Saunders, was married to the defendant,
William McQueen Saunders, on the 29th of May,
1855 ; that she lived with him as his wife until about
December 1st, 1865, at which time he deserted her,
and has not since lived with her ; that there was born
of such marriage, upon the dates named, the follow-
ing children who are also complainants in the bill of
complaint, to-wit : William H. Saunders, February
18th, 1856 ; McQueen Saunders, January 1st, 1861,
and Sallie Saunders, August 31st, 1866.   (The latter
named, Sallie Saunders, intermarried with Joseph S.
Wynns, and became Sallie Wynns.   These latter
named parties and their mother, the said Sophia G.,
and said Joseph S. Wynns, constituted the complain-
ants in the cause).   That about the 1st day of January,
1865, the said William McQueen Saunders was seized
and possessed of certain lots of land in the town of
Starke, Bradford county, which are fully described,
and being so seized, executed a deed of conveyance to
the defendant, John C. Richard, and his heirs in fee
simple forever, but in trust for the sole use and be-
hoof of the said Sophia G. Saunders in and for the
term of her natural life, and at her death, the said
John C. Richard, by the terms of said conveyance, was
to hold the same for the use, benefit and behoof of the
aforesaid complainants, who are alleged to be the chil-
dren of said Sophia G. and William McQueen Saun-
ders ; that said defendant, John C. Richard, accepted
said deed and the trust declared thereby, and went
into possession of said lands ; that on or about Jan-
uary 1st, 1878, the said defendant, John C. Richard,

destroyed said trust deed, and on the 2d day of January, 1878, procured the said defendant, William McQueen Saunders, to execute another deed of conveyance to him, the said John C. Richard, whereby it was sought to convey to the said Richard the same land which was embraced within the trust deed. It is further alleged in the bill that the said defendant, Richard, at various times and by separate conveyances during the years 1883 and 1885, conveyed several portions of said land to the defendants, John Kleinschmidt, Frank W. Simmons, T. C. Thaxton, and Kate Young, respectively. Kate Young afterwards intermarried with one Heinberger and became Kate Heinberger. These last parties, alleged to be purchasers of different portions of the property, are, together with the said John C. Richard and William McQueen Saunders, made parties defendant.

The prayer of the bill is, that the court protect and enforce the rights and trusts declared by said original trust deed, and compel the defendant, John C. Richard, to account for said trust estate so committed to him, including any rents, issues and profits he may have received from the same, to be accounted for to said Sophia G. Saunders ; that the persons alleged to be purchasers from said Richard be declared trustees holding the legal title severally of the respective lots purchased by them in trust for the complainants. The bill also contained a prayer to the effect that if the proper relief had not been prayed, that the court would grant such relief as the complainants might be entitled under the facts of the case.

The defendants first interposed a demurrer to the bill of complaint. This demurrer was overruled. Afterwards all of the defendants except William McQueen Saunders (who appears to have made no fur-

ther defense after the overruling of the demurrer) filed their joint and several answer to the bill of complaint. After replication had been filed and the testimony partly taken, the defendants, upon motion and affidavit, were granted leave to file amended answers. By stipulation of the counsel for the respective parties it was agreed that the replication filed to the original answer should put in issue the allegations of the amended answers. Each defendant filed a separate answer. The amended answers constituted full answers to the bill of complaint—the amended being substituted for the original answer. The issues between the parties are made by the bill of complaint and the amended answers. A synopsis of these answers is as follows: The answer of the defendant, John C. Richard, admitted the allegations of the bill alleging the marriage of the complainant, Sophia G., and William McQueen Saunders, and the birth of children to them; and that William McQueen Saunders was seized of the lands as alleged. It denied in express terms the execution of the trust deed and that said defendant destroyed said deed as alleged. Then the answer, as affirmative matters of defense, states as follows: That in the year 1866 the said William McQueen Saunders and Sophia G., his wife, had some domestic trouble and separated; that it was then agreed by them that said Sophia should, at the cost and expense of said Saunders, apply for a divorce from her said husband; that he should convey to her a farm in Clay county, and should make a deed conveying to this defendant certain lots of land in the town of Starke, to be held by him in trust for said Sophia during her life, and for her said children after her death, in consideration that she should procure a divorce from her

said husband, and that he should not oppose her application for such divorce, and for no other consideration; that under said agreement said William McQueen Saunders executed a deed to said Sophia on said farm in Clay county, and by consent of said Saunders and his wife said deed was left in the hands of this defendant to be delivered to said Sophia when she should obtain a decree of divorce from her husband; that soon thereafter she did apply to the Circuit Court for the county of Duval for such divorce, and a decree of divorce from the bonds of matrimony was granted and signed by the Hon. B. A. Putnam, judge, on the 26th day of June, 1866, and soon afterward this defendant delivered to said Sophia the said deed conveying the Clay county farm, according to the aforesaid agreement. On entering into said agreement between Saunders and his wife, the said William McQueen Saunders caused to be prepared a paper purporting to be a conveyance by said William McQueen Saunders to this defendant, his heirs and assigns, of certain lots in said town of Starke (which he believes to be the same lots mentioned in complainants' bill) in trust for the use of the said Sophia G. for the term of her life, and at her death for the use of her said children; that said paper was signed by said William McQueen Saunders, but the same was not sealed with his seal, nor was any scrawl, indicating a seal, affixed to or made upon said paper so signed by said Saunders; the said paper was in that condition placed in the hands of this defendant by said Saunders, and remained in his possession in that condition until about the first of January, 1878, when the said paper was, at the request of said Sophia G. Saunders, surrendered to said William McQueen Saunders, who destroyed the same. The said paper was surrendered to said Saunders under circumstances

and in the manner following, to-wit: said Sophia G. Saunders being without means, and wanting a home and money, it was at her request, and with her concurrence, agreed that this defendant should in his own right purchase the lots mentioned in said bill of complaint from said William McQueen Saunders, at the price of one thousand dollars, which sum was then a fair valuation of said lots, and that five hundred dollars of the purchase money should be paid by him to said Saunders, and five hundred dollars to said Sophia, and also that four acres of farm land in Starke should be purchased by this defendant and conveyed to said Sophia. In pursuance of this agreement of the parties, said Saunders conveyed said lots in fee simple to this defendant, who paid said William McQueen Saunders five hundred dollars in cash; also purchased for said Sophia and caused it to be conveyed to her four acres of farming land at Starke selected by her; and conveyed to her lots numbered three, five and seven, in block twenty-six, and lot number one in said block (except forty feet square out of the northwest corner) at a valuation of about four hundred dollars, and paid her a balance of about one hundred dollars in money. The said lots were conveyed by this defendant to said Sophia G. at her request, by deed vesting in her the use during her life, and at her death in said Sallie Wynns, one of complainants. This defendant further says that subsequent to the aforesaid conveyance by him to the said Sophia G., she, the said Sophia G., and her son, William H. Saunders, by deed, released and conveyed to him any and all right and interest they or either of them had in all the said lots in Starke, excepting those lots conveyed as aforesaid by him to said Sophia G. and Sallie Wynns. This defendant further says that the conveyances of the several lots to the defendants,

Kleinschmidt, Simmons, Thaxton and Kate Young, were each made in good faith and for a valuable and valid consideration, and said conveyances were made by deeds with full covenants of warranty of title, and that neither of said defendants named in this paragraph, to the knowledge and belief of this defendant, had notice of any matter alleged in the bill of complaint in respect to any such alleged trust as is stated in said bill.

The answer of the defendant, Kleinschmidt, set up in substance that he was a purchaser for value under a deed warranting the title; that he went into possession under such deed and made valuable improvements; that he had no knowledge or notice whatever of the trust set up in the bill at the time he purchased the land. The other defendants, Simmons, Thaxton and Heinberger, all answered to similar effect. Each of these answers had attached to it the deed of John C. Richard to the respective defendants. These deeds all contained full covenants warranting the title to the property. Voluminous testimony was taken. Such portions as are essential to a consideration of the case will be briefly stated in a condensed form in the further course of this opinion, in connection with the consideration of the subject-matter upon which such testimony was offered. Upon hearing, the court dismissed the case at complainants' cost, from which decree the complainants appealed.

The first error alleged in the petition of appeal is upon the ruling of the court granting leave to defendants to file amended answers. These amendments were made after due notice. Cause for such amendment was shown by affidavit to the effect that some of the statements of the former answer were untrue and made by mistake. The objection made to this amend-

ment is that the amended answers contradict in many respects the original answer on. file in the case. While this objection is to some extent true in point of fact, we do not think it is well taken in point of law. Under Circuit Court Rule in Equity No. 61, the court had power, upon motion and cause shown, to permit amendments, although they may qualify and alter the original statements. Under the liberal system of amending pleadings prevailing in this State, we can not hold that the ruling complained of is erroneous.

An analysis of the answers of the defendants shows four matters of defense set up for the defendant, Richard. These matters of defense are, first, that the trust deed was void because based upon an illegal consideration, *i. e.*, an agreement for a collusive divorce ; second, that the same was defectively executed, in not being under seal ; third, that it was surrendered to the grantor, and destroyed at the instance and request of Sophia G. Saunders, one of the *cestuis que trust*, and a deed to the property made to the defendant, Richard, with her knowledge, acquiescence and consent; fourth, a settlement between the trustee and *cestuis que trust*, whereby Sophia G. Saunders, in her own right and as natural gaurdian of her co-complainants, Sallie Saunders (now Mrs. Wynns) and McQueen Saunders, made a quit-claim deed, together with William H. Saunders, to all of the property in question, except some lots which the defendant, Richard, conveyed to her for her natural life, with remainder over to her daughter Sallie.

Referring to the first ground of defense of the defendant Richard, based upon the alleged illegality of the consideration upon which the trust deed was executed, we will briefly condense the evidence upon this subject. The facts and circumstances surrounding the

execution of this trust deed, as gathered from the
pleadings and testimony in the case, are these: The
complainant Sophia G. Saunders, for more than ten
years prior to the month of December, 1865, was the
wife of the defendant William McQueen Saunders;
she had living three children that she had borne to
him, one about ten, one about six, and one about one
year old, and was then pregnant with a female child;
she had been a faithful and dutiful wife, but he de-
serted her for no apparent cause, leaving herself and
helpless children in straightened and almost destitute
circumstances. The defendant John C. Richard
claimed to be a mutual friend of both parties and to
have an especial feeling of sympathy for the faithful
and affectionate but deserted and suffering wife. At
the instance of the wife, and at her request to make the
best terms possible with her husband for her for some
provision and support for herself and little ones, he
saw the husband in her interest. The best terms he
could obtain from the husband was a reluctant consent
to convey to the wife a small farm in Clay county, and
to the said Richard as trustee the property in dispute
for the use and benefit of Mrs. Saunders during her
life, and to become the property of the children at her
death. This consent of the defendant William Mc-
Queen Saunders was brought about by the urgency of
Richard. Saunders desired to get divorced from his
wife (shortly after marrying another woman), and
Richard told him he would get no divorce, that his
wife would contest it, unless he executed the deed.
The complainant Mrs. Saunders did not actually par-
ticipate in this arrangement. It was made by and be-
tween the defendants John C. Richard and William
McQueen Saunders. She never even saw the trust
deed, which remained for twelve years in the posses-

sion of said Richard. Richard accepted the trust imposed by the deed, entered into possession of the property under the deed, and so remained in such possession for more than twelve years, made efforts to have the deed recorded, and recognizing its binding force and validity. During all this period of time, much more than sufficient to create a prescriptive title under the statute of limitations, the grantor, William McQueen Saunders, made no claim to the property, but expressly recognized the title of Richard, and the right to the use and possession of Mrs. Saunders. At the end of these long years Richard thinks he has discovered a defect in the execution of the deed, that it was without seal, and either destroyed the deed himself or surrendered it to William McQueen Saunders, who destroyed it, and takes from Saunders a title to the property in his own name, agreeing to make some provision for Mrs. Saunders and her daughter out of it. Having himself assumed to act as the friend of a woman deserted, helpless, in a condition soon to become a mother, one apparently of limited education and slight familiarity with business matters, one who trusted in his friendship, followed his advice, and relied with confidence upon his business capacity, can the defendant Richard dispute the consideration upon which said trust deed was founded? Being a party to this deed, with full knowledge of its consideration, the same having been executed upon his suggestion, solicitation and request, having accepted the trust, acted under the deed, and taken possession of the property, the grantor raising no objection, can he for his own benefit surrender the trust deed and take a deed to the same property from the grantor, to the injury of his *cestuis que trust?* If the consideration of the deed was against public policy, why did he ac-

cept the trust declared thereby and become a party to the same? Without impugning the motives of Richard, these questions are pertinent. If a fraud was committed by the deed, whose fraud was it, if not the fraud of Richards, who was the party grantee therein, and at whose suggestion it came into existence? Was it the fraud of the deserted wife and her helpless infants and her unborn babe? She relied upon Richard to attend to her interests in the matter; otherwise she might have brought her suit for alimony and support along with the suit for a divorce, alleged to have been brought by her. We do not believe we are called upon in this case to pass upon the question whether a deed by a husband providing for a wife and children is *ipso facto* void because based upon an agreement that a divorce shall be obtained by one of the parties, without resistance by the other. We express no opinion as to whether such a doctrine might or might not be invoked in a proper case. We are firmly of the opinion that, in view of the facts and circumstances of this case, and of the conduct of the defendant Richard as stated, that it does not lie in his mouth to say, as a defense to a bill brought to enforce the trusts declared in said deed, that the same was founded upon an illegal consideration. We are satisfied that the original acceptance of the trust, the taking and holding possession of the property for many years under the trust deed, and long acquiescence in the provisions of the same, estop the defendant Richard from maintaining the defense, that it was executed upon an illegal consideration, in hostility to the interests of his *cestuis que trust*. Strong vs. Willis, 3 Fla., 124, text 133, S. C. 52 Am. Dec. 364; Ballamy vs. Bellamy, 6 Fla., 62, text 102. This defendant with full knowledge of the facts, knowing the consideration upon which the deed was

based, has elected to treat it as a valid instrument. He can not at this late date disaffirm that election. The general doctrine upon this subject is thus stated: "The doctrine of election is founded upon the principle that there is an implied condition, that he who accepts a benefit under an instrument must adopt the whole of it, conforming with all its provisions, and renouncing every right inconsistent with them. This principle is recognized and established in this country almost precisely the same as in England, and rests upon the equitable ground that no man can be permitted to claim inconsistent rights with regard to the same subject and that any one who claims an interest under an instrument, is bound to give full effect to that instrument as far as he can. A person can not accept and reject the same instrument, or having availed himself of it as to part, defeat its provisions in any other part; and this applies to deeds, wills, and all other instruments whatsoever. Taking possession of property under a will or other instrument, and exercising unequivocal acts of ownership over it for a long period of time, will amount to a binding election to confirm the instrument." Herman on Estoppel, sec. 467. "If a party having the right to repudiate or affirm a transaction, affirms it, he can not afterwards resort to his right of repudiation." *Ibid*, sec. 468. "Impeachable transactions may be rendered valid by act of confirmation, or acquiescense for a great length of time." *Ibid*, sec. 477. Under the general duty of a trustee it is said: "A trustee must assume the validity of the trust under which he acts, until it is actually impeached, although he may have some suspicion that there may have been fraud or collusion in the appointment and settlement. So, if a trustee obtains a knowledge of facts that would defeat the title of his *cestuis que*

*trust*, and give the property over to another, he is not justified in morals in communicating such facts to such other person. His duty is to manage the property for his *cestui que trust*, and not to keep his conscience, or betray his title or interests, and he can make no admissions prejudicial to the rights of his *cestui que trust*." 1 Perry on Trusts, Sec. 433. One is not always relieved from his contract because it is illegal or made upon a void consideration; there are often circumstances which estop him from setting up such a defense. In Southern Life Insurance & Trust Co. vs. Lanier, 5 Fla., 110, 58 Am. Dec. 448, this court held: "It is the duty of a party, upon discovering a fraud, to take immediate steps for the rescission of his contract. By his ratification of the acts of which he complains, and to which he was a willing party, he is forever estopped from setting up such a defense." That one is estopped to assert title by reason of ratification and acquiescence in a sale is also established in this State in the case of Chesser vs. DePrater, 20 Fla., 691, text 696 ; Terrell vs. Weymouth, 32 Fla., 255; 13 South., 429. In the case of Daniels vs. Tearney, 102 U. S., 415, text 419, the Supreme Court of the United States held that a bond sued upon was void because given "in aid and furtherance of the objects and policy of the ordinance of secession" of the State of Virginia. But it held that the obligor in the bond could not urge its invalidity in defense of the action, because he had obtained the benefit of a stay of execution provided for by the statute under which the bond was given. In numerous cases it has been adjudicated that a trustee, who has accepted and entered upon the administration of a trust, can not allege the invalidity of his appointment as a defense for not accounting for the trust property. Damouth vs. Klock, 29 Mich.,

289; Harbin vs. Bell, 54 Ala., 389. It has many times and in various classes of cases been determined, where one has knowingly been a party to a transaction, or has actually engaged in causing certain action to be taken, that he is estopped to deny the validity of such matters. Stewart vs. Board of Commissioners of Wyandotte County, 45 Kansas, 708; S. C. 23 Am. St. Rep. 746; Ferguson vs. Landram, 5 Bush, 230, S. C. 96 Am. Dec. 350; Collier vs. Morrow, 90 Ga., 148; McCarthy vs. Lavasche, 89 Ill., 270, S. C. 31 Am. Rep., 83; Counterman vs. Dublin Township, 38 Ohio St., 515.

The second ground of defense urged by Richard is, that the trust deed was not under seal, and therefore inoperative to convey the title of the real estate described in it; such being the case he surrendered it to William McQueen Saunders, the grantor, and purchased the property and took a deed in his (Richard's) own name. A great deal that has been herein said about a trustee's being estopped to impeach the consideration of a deed will also apply under the same circumstances to a denial of the proper execution of the deed. Likewise what is hereinafter said in reference to the duty of a trustee in the protection of the trust estate, is to some extent also applicable to the question just above discussed in regard to the estoppel of a trustee to impeach the consideration of a trust deed. The principle has already been stated, that a trustee who has accepted the trust, entered upon the discharge of his duty as trustee, and taken possession of the trust property, can not in an action brought by his *cestui que trust* for an accounting for the trust property received by him allege the invalidity of his appointment as trustee. Damouth vs. Klock, 29 Mich., 289; Harbin vs. Bell, 54 Ala., 389; Benjamin vs. Gill,

45 Ga., 110. The long acquiescence of Richard in the trust deed estops him from asserting its defective execution. Portis vs. Hill, 30 Texas, 529, S. C. 98 Am. Dec. 481. The defect in the execution of the deed in this case was no reason why it should have been surrendered to the grantor. The grantor made no claim of a defect in the deed, asserted no title or ownership of the land, but expressly recognized the title of the trustee. This recognition continued for a much longer period of time than is required by the statute of limitations to perfect a prescriptive title. If the trust deed was not perfect as a deed of conveyance from its inception, it was at least "a written instrument," purporting to be "conveyance of the premises in question," and there had been more than seven years' "continued occupation and possession of the premises included in such instrument." No action could have been brought for its recovery, and the title had for all practical purposes become as perfect in the hands of the trustee as if the original deed had been executed with all the formalities required by law. Statute of limitations, McClellan's Digest, secs. 2, 5, pages 731, 732. It can not be conceived that a man of ordinary prudence, having a title of this character to real estate would, without consulting legal advice, voluntarily surrender the property or the written evidences of his title thereto. A trustee in the care and management of the trust estate is held to at least such degree of care, judgment and discretion as a man of ordinary prudence and capacity would exercise with regard to his own property. 2 Story's Equity Jurisprudence, sec. 1272; 1 Perry on Trusts, secs. 433, 441.

The third ground of defense is, that the defendant, Richard, surrendered the trust deed to William McQueen Saunders, who destroyed it, and took the

title to the property in his own name, with the knowledge and consent and acquiescence of Mrs. Saunders. The bill of complaint charges the trust deed to have been destroyed by the defendant, Richard. The answer of Richard denies that he destroyed the deed with his own hands, but admits that he surrendered it, as being void and of no effect, to William McQueen Saunders who destroyed it. We can see no difference in the destruction of the deed by Richard himself, and its destruction under these circumstances by Saunders. The circumstances leading up to the destruction of this deed, gathered from the pleadings and testimony in the case are about as follows: After holding the trust deed and the property conveyed thereby for a number of years, Richard, the trustee, became of the opinion that the deed was fatally defective, and his title to the trust property worthless. Mrs. Saunders, learning of this opinion of Richard, was anxious to have the title perfected, and requested him to see William McQueen Saunders and get the matter arranged. Richard then went to Jacksonville, where said Saunders lived. He informed Saunders of the worthlessness of the trust deed, and that it conveyed no title. Then he proposed to buy for himself, surrenders the deed, takes a new deed in his own name. Saunders then destroys the trust deed. It was agreed in this latter arrangement that some provision should be made for Mrs. Saunders and her daughter Sallie (Mrs. Wynns). We do not see upon what theory it can be contended that the infants *cestuis que trust* can be concluded by an arrangement of this kind, to which they were not parties, and of which it is not even shown, that they had any notice or knowledge whatever. Richard was a trustee not only for Mrs. Saunders, but for her children. A trustee holds as much for the

benefit and protection of those entitled to the estate in remainder, as of those to whom the immediate benficial enjoyment is given. Braswell vs. Downs, 11 Fla., 62. Whatever arrangement may have been made between the trustee and one of the *cestuis que trust* does not conclude the rights of the others. There can be no doubt from the facts in this case that Mrs. Saunders in making any agreement that Richard should buy the trust estate in his own name, or in any ratification which she might have given to such purchase after it was made, was influenced by her confidence in the representation of the defendant Richard as to the worthlessness of the title to the trust estate. It follows from what has heretofore been said, that he was mistaken in this opinion. The duties and obligations of trustees and the care and skill with which they should perform the office assumed by them, prevents Richard from taking advantage of the blunder and mistake which he has made, and which misled his *cestuis que trust* to their injury and detriment. The law looks with extreme jealousy upon all purchases of the trust estate by the trustee. Such purchases are always voidable, upon proper proceeding taken by the *cestui que trust*. Bellamy vs. Bellamy, 6 Fla., 62; Davoue vs. Fanning, 2 Johns. Chy. 252 (cited in Price vs. Winter, 15 Fla., 66, text 109); Perry on Trusts, sec. 194 *et seq.*; *Ibid* 787.

The fourth ground of defense of Richard is a settlement between the parties whereby a deed made by Mrs. Saunders and William H. Saunders, conveying all the trust property to him, except some lots conveyed by him (Richard) to Mrs. Saunders. It is clear from the evidence that Mrs. Saunders was induced to make this settlement and conveyance while laboring under the impression derived from representations made by Richard, that his title as trustee was worthless, and,

in her own language, that she "would take that or get nothing." The deed on her part was executed by her in her own behalf, and as natural guardian of McQueen C. Caunders and Sarah J. Saunders, her minor children and co-*cestuis que trust*. It needs neither argument nor citation of authority to demonstrate that we state as mildly as possible the imperfection of this deed, when we say that it was voidable at the election of the infant *cestuis que trust*. Without considering the want of power of a "natural guardian," or any other guardian, to sell the interest of infants in real estate, without authority of some court of competent jurisdiction, the general principle is well established that one *cestui que trust* has no power to give away or dispose of the rights of another. Davoue vs. Fanning, 2 Johns. Chy. 252, text 259. William H. Saunders testified that he personally received no consideration whatever for executing the deed; that he did so upon representations of Richard that it amounted to nothing; and there is no testimony contradicting him upon this subject. From what has been said in the course of this opinion it follows that the relation of trustee and *cestuis que trust*, at the time of the execution of the deed mentioned to Richard, had not ceased to exist. He was still trustee for Mrs. Saunders and her children. Such relation could only cease upon the mutual consent of all parties, upon a fair and full understanding of the facts and of their rights in the matter. Two of these children were minors, incapable of giving their consent. If Mrs. Saunders, who is alleged to be a married woman, and whose divorce is not clearly shown by the record, gave her consent, it was under a misapprehension of her rights, as already stated. The relation of trustee and *cestui que trust* still existing between the parties, Richard should not have purchased

the trust estate from her. The law regards with a jealous eye all such transactions between persons occupying these confidential relations. As a general rule a court of equity will avoid the contract altogether without proof of fraud, and will never sustain it except where the party holding the position of trust and confidence clearly proves the entire fairness of the transaction, and that it was advantageous to the *cestui que trust*. 1 Perry on Trusts, secs. 194, 195. The transaction will not be sustained if the trustee has taken advantage of any information received by him in such capacity, nor if the *cestui que trust* entered into the transaction in ignorance of her legal rights. McCants vs. Bee, 1 McCord's Chy. 383, S. C. 16 Am. Dec. 610.

While we are of the opinion that it was error to dismiss the complainant's bill out of the court below, still we do not think she is entitled to the full measure of relief that she claims. While she has a right to avoid her deed to Richard, she can not do so unless she accounts to Richard for the money which she received from him, and which was invested in other property than the trust estate. In the taking of any account of the rents and profits which would be due Mrs. Saunders from Richard, he should have credit for this money. The deed by which a portion of the trust property was attempted to be conveyed in fee by Richard to Mrs. Saunders should be cancelled, so that the property shall be subject to the trust provided in the trust deed of William McQueen Saunders to Richard. We think the complainants, William H. Saunders, McQueen C. Saunders and Sallie Wynns, should have their rights and interests in the trust property as against the defendant Richard, declared and protected and the trust enforced, and that Richard be held liable

as to these complainants for having violated the trust and disposed of the trust property.

The defense made by the other defendants, purchasers of portions of the trust property, is, that they were innocent purchasers for value, without any notice or knowledge whatever of the trust. The bill of complaint makes no allegation of any notice or knowledge of the trust whatever of these parties when they purchased the property. The answer of the defendants emphatically deny that they had any notice, actual or constructive, of the trust at the time of purchase and taking possession of said land. They were each of them innocent purchasers without notice. As to all of the defendants, except Richard, the bill of complaint was properly dismissed. 1 Perry on Trusts sec. 218.

The decree of the court below is reversed, and the cause remanded for further proceedings consistent with law and this opinion.