DENNION N. BEARDSLEY et al., Appellants, *v.* MARTIN G. JOHNSON et al., Respondents.

Provisions in statutes and by-laws requiring the election of directors of corporations to be held on a specified day are regarded as directory; the election, if not held on the regular day, may be held at a later day, and the directors then chosen, if there be no other irregularity or infirmity in their title, will be directors *de jure*.

The summons in an action against a railroad corporation was served in 1883 upon J. At the regular annual meeting of the stockholders of the corporation, held in November, 1879, J. was elected a director, and at a meeting of the directors on the same day he was elected president. Due notice of the annual meeting for 1880 was given, but, as all the stockholders were not present, the meeting, without any action, adjourned. In September, 1881, J. sold and transferred all of his stock. Prior to that time no certificates of stock had been issued to the subscribers. A meeting of the stockholders was held in October, 1881, at which directors were elected, J. not being one of them, and at a meeting of the directors on the same day M. was elected president. A judgment was rendered in said action, and on return of execution unsatisfied, this action was brought against stockholders of the corporation under the General Railroad Act (§ 10, chap. 140, Laws of 1850) to recover the amount unpaid on their stock. It did not appear that J. ever acted as officer or agent of the company after September, 1881. *Held*, that the service of summons in the action against the corporation was void and the judgment a nullity, as J. was not an officer or managing agent upon whom service could be made (Code Civ. Pro. § 431, subd. 3); that after J. sold and transferred his stock he ceased to be a director *de jure*, and while, if he continued and was permitted to act as such, he might be treated as a director *de facto*, until others were chosen (§ 5, chap. 140, Laws of 1850), upon such election he ceased to be a director either *de jure* or *de facto;* that the election of directors in October, 1881, was legal, although it did not take place at a regular annual meeting of the stockholders.

At the annual meeting of the stockholders in 1882, a resolution was offered to amend the by-laws so that thereafter the board of directors should consist of seven instead of thirteen; this was adopted at an adjourned meeting, and seven were elected, not including J. The directors elected McD. as president. The articles of association stated that the length of the road and its branches was thirty-five miles. *Held*, that the election of seven instead of thirteen directors in 1882, was valid, as the statement in the articles did not show that the main route of the road was over fifteen miles in length, and in the absence of evidence it was to be assumed it was no longer, and thus the case came within the provisions of the

act of 1864 (§ 3, chap. 582, Laws of 1864), permitting a railroad company "whose main route of road does not exceed fifteen miles" to elect seven directors.

The further construction of the road was abandoned in September, 1881. *Held*, that the corporation did not thereby cease to exist; that if it had vitality enough to be brought into court as defendant in 1883, it had sufficient vitality to elect directors prior to that time; and that although the election of directors thereafter was merely formal, those chosen became the directors, and for every legal purpose were to be so regarded.

(Submitted March 21, 1890; decided April 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made June 19, 1888, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought against defendants as stockholders of the Eastern Railroad Company of Long Island, to recover the amount of their unpaid subscriptions to said stock to satisfy an alleged judgment against said company upon which execution had been returned unsatisfied.

The material facts are stated in the opinion.

*Wakeman & Campbell* for appellants. The election of directors claimed to have taken place on the 15th of October, 1881, was wholly unauthorized; it was made after the company had been abandoned; was concealed from the world and the plaintiffs; was made by less than a majority of the stock; was manifestly to avoid legal liability and fraudulent, and, therefore, void. (Laws of 1880, chap. 575, §§ 13, 181, 182.)

*James Armstrong* for respondents. The plaintiffs' right to recover in this action depends entirely upon the validity of the judgment entered in the action of *Beardsley* v. *E. R. R. Co.* The judgment was improperly entered and affords no basis for this action. (Laws of 1850, chap. 140, § 10.) The election for directors of the Eastern Railroad Company, held on October 15, 1881, was held in consequence of the failure to hold

the regular annual election in November, 1880, and for the purpose of electing directors and officers to succeed those holding over from the election of 1879, was valid and effectual, and was properly and lawfully held. (Laws of 1850, chap. 140, § 5; *Vandenburgh* v. *B. R. Co.*, 29 Hun, 355; Pierce on Railroads, 25, 26; 2 Kent's Comm. 265; Angel & Ames on Corp. §§ 286, 287.)

EARL, J. At some time prior to September, 1881, the plaintiffs became creditors of the Eastern Railroad Company of Long Island, and they claim that on the 28th day of July, 1883, they commenced an action for the recovery of their debt against the company by the service of the summons therein upon Martin G. Johnson, who was claimed at the time to be vice-president or president and a director of the company. In pursuance of such service, they entered judgment against the company by default on the twenty-eighth day of August thereafter, for upwards of $14,000. Execution was issued upon that judgment and returned unsatisfied, and then, in December, 1883, they commenced this action, under section 10 of the General Railroad Act of 1850, against the defendants, stockholders in the company, to recover of them the amount unpaid on their stock which was conceded to be ninety per cent thereof.

Upon the trial of the action, the sole defense of the defendants was that at the time of the service of the summons in the action against the company, Johnson was not a managing agent or an officer of the company as prescribed in subdivision 3 of section 431 of the Code, and that, therefore, that action was never commenced and the judgment was a nullity; and so the trial judge held, and we think the facts justified his decision.

The articles of association of the company filed and recorded in December, 1878, contain the names of thirteen directors, who were to manage the affairs of the company for the first year, and until others should be chosen in their places, and Johnson's name is among them. The by-laws of the company provided that the affairs of the company should be under the

management and control of the board of directors consisting of thirteen stockholders, and that the annual meeting for the election of directors should be held at the office of the company, unless some other place should be duly designated, on the third Tuesday of November of each year. On the third Tuesday of November, 1879, at the regular annual meeting of the stockholders, thirteen directors were chosen for the ensuing year, and Johnson was one of them ; and at a meeting of the directors held on the same day he was elected president of the company. Due notice was given for the annual meeting of the stockholders for the third Tuesday of November, 1880 ; but, as all the stockholders were not present, the meeting was, without any action, adjourned. The company proceeded with the construction of its road until September, 1881, when the further construction thereof was abandoned. Prior to that time, the company had not issued certificates of stock to the subscribers thereof, and on the twenty-first day of that month, Johnson sold and transferred all his stock in the company. Pursuant to notice, on the 15th day of October, 1881, there was a meeting of the stockholders for the election of directors for the reason that none had been elected at the previous regular annual meeting, and thirteen directors were elected, Johnson not being one of them ; and at a meeting of the directors on that day, W. S. Myton was elected president of the company. The next regular annual meeting of the stockholders was held on the third Tuesday of November, 1882, at which a resolution was offered to amend the by-laws so that the board of directors should consist of seven instead of thirteen. On account of the small attendance of stockholders, that meeting was adjourned to the nineteenth day of December, at which time the meeting was held and the resolution reducing the number of directors to seven was adopted, and then seven directors, of whom Johnson was not one, were chosen for the ensuing year, and they elected E. T. McDonald president of the company. There is no evidence that Johnson ever acted as an officer or agent of the company after September, 1881.

Upon these facts, it is utterly impossible to find that Johnson was an officer or agent of the company on the 28th day of July, 1883, when the summons was served upon him. It may be assumed that he continued a director of the company, notwithstanding the sale of his stock, until October 15, 1881, when a new board of directors was chosen, of which he was not one. It is provided in section 5 of the act of 1850, that no person shall be director of a railroad company organized under that act unless he is a stockholder, and so the by-laws of this company provided that its directors should be stockholders. After Johnson sold and transferred his stock, therefore, he ceased to be a director *de jure*, but, if he continued to act, and was permitted to act as such, he could probably be treated as a director *de facto*. He could not, however, thereafter, be legally chosen a director. By the same section, directors, once legally chosen, would hold their office until others were chosen in their places.

The election of directors on the 15th day of October, 1887, was legal, although it did not take place at a regular annual meeting of the stockholders. That election took place in pursuance of notice, as we must assume, to all the stockholders. For aught that appears, all the stockholders were present and participated in the election, and none of them, so far as appears, objected to its regularity. Provisions in statutes and by-laws requiring the election of directors to be had on a specified day are regarded as directory, and the election, if not held on the regular day, may be held at a later day, and the directors then chosen, if there be no other irregularity or infirmity in their title, will be directors *de jure*. (*Vandenburgh* v. *B. R. Co.*, 29 Hun, 348; *Hughes* v. *Parker*, 20 N. H. 58; *N. F. Ins. Co.* v. *Moore*, 55 id. 48; Pierce on Railroads, 25, 26.) If, therefore, Johnson was *de jure* or *de facto* a director prior to that election, he ceased to be thereafter. But this is not all. In 1882 the regular annual meeting was held, and it was adjourned to December nineteenth, when the number of directors was reduced to seven, and a board of seven was chosen, and they elected a presi-

dent of the company and assumed to act and represent the company.

The plaintiffs claim that that election was invalid for the reason that the reduction of the number of directors to seven was unauthorized by the statute. It is provided in section 3 of the act (Laws of 1864, chap. 583) that "any railroad company whose main route of road does not exceed fifteen miles may elect seven of its stockholders as a board of directors to manage its affairs at any annual election after the passage of this act."

There was, upon the trial, no proof of the length of this road, except that furnished by the articles of association, as follows: "The total length of said railroad and its branches, as near as may be estimated, is thirty-five miles." This does not show the length of its main route, and that may have been, and, in the absence of proof, we must assume it to have been not greater than fifteen miles. Hence, that election appears to have been regular.

Although the further construction of the road was abandoned in September, 1881, the corporation did not thereby cease to exist. If it had vitality enough to be brought into court as a defendant in 1883, it had sufficient vitality for the election of directors at any previous time.

Something is vaguely said in the brief for the plaintiff about fraud which should prevent the defendants from claiming that Johnson was not a director when he was served. But no fraud was alleged in the complaint or proved upon the trial.

It is probably true that the elections of directors of this company after September, 1881, were merely formal, and that the directors had nothing to do and little or no purpose to serve. But they were nevertheless chosen and became the directors of the company, and for every legal purpose were to be so regarded.

We, therefore, see no reason to doubt that the judgment below was right, and it should be affirmed with costs.

All concur.

Judgment affirmed.