THE ASSOCIATE ALUMNI OF THE GENERAL THEOLOGICAL SEMINARY OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES OF AMERICA, Plaintiff, *v.* THE GENERAL THEOLOGICAL SEMINARY OF THE PROTESTANT EPISCOPAL CHURCH IN THE UNITED STATES, Defendant.

*Trusts — transfer of a fund, collected by subscription by an alumni association, to a seminary upon certain conditions — violation of the conditions by the seminary — incorporation of the association vesting the title to the fund in it — right of the corporation to retake the fund from the seminary.*

An unincorporated alumni association of a theological seminary, having pledged itself to the work of establishing a professorship in the seminary, requested the seminary's approval of such work, which approval was expressed in a resolution of its trustees which recognized the association "as agents accordingly, and earnestly commends their agency to the confidence and liberality of the church."

The association thereafter collected upwards of $25,000 for this purpose, and paid it to the seminary upon certain express written conditions, which conditions

for several years were recognized and complied with by the seminary in the use of the income of the fund, and the rights of the alumni association therein were also recognized by various other acts on the part of the seminary inconsistent with any claim of ownership thereof by the seminary.

Subsequently, at an annual meeting of the association, by a unanimous vote, the alumni directed that steps be taken to incorporate the association, which was done, every member of the association in good standing at the time of the incorporation being elected, by name and individually, a member of the corporation.

*Held,* that a valid trust was created upon the conditions which the seminary had assented to, which it was estopped from questioning;

That its refusal to comply with such conditions authorized a judgment in favor of the subsequently formed corporation retransferring to it the fund in question;

That the action of the alumni in directing the incorporation of their association was effective to vest the corporation so formed with the title to the fund;

That, under the circumstances of this case, the use of the word "agents" in the resolution of the trustees of the seminary could not properly be given a construction which would make the alumni, at the time the fund was collected, mere agents of the seminary in the collection and payment over to it of this fund.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

The defendant is an educational institution devoted particularly to preparing students for the ministry. It received a charter from the Legislature of this State in 1822, which was amended in 1868. Its government under the charter, as amended, is vested in a board of trustees, whose authority in turn is, during a recess of the board, delegated to a standing committee.

In 1832 certain of the alumni of the defendant organized a voluntary unincorporated association under the name of "The Associate Alumni of the General Theological Seminary of the Protestant Episcopal Church in the United States," the object of which was "to cherish a spirit of mutual interest and union among its members; to advance the cause of theological learning and evangelical truth and piety, and to promote the advantage of the institution" from which its members had graduated. It adopted a constitution which recited the object of its creation, and provided that all graduates of the defendant should be eligible as members, and that the funds of the association, among other things, should be "appropri-

ated to the support of one or more scholarships in the Seminary." In 1836 it appointed a committee to take into consideration the expediency of attempting to establish a permanent fund for one of the professorships in the seminary not then endowed; and at a meeting held the following year it passed a resolution pledging itself to the work of establishing, " as soon as the times will permit," a professorship of pastoral theology and pulpit eloquence. Shortly thereafter the first contribution to the fund which is the subject-matter of this controversy was made by a subscriber paying $250 into the treasury of the association. In 1839 the association passed a resolution reciting that, in its opinion, it was highly important that the professorship in question should be endowed forthwith, and that, as it had expressed a readiness to assume the responsibility of making an effort in that direction, it requested the approval of the defendant's trustees of its work " for the endowment of the above-mentioned professorship." This action of the association was communicated to defendant's board of trustees, and such board immediately passed a resolution expressing its pleasure at the continued disposition of the association to engage as agents for the purpose of raising the fund, and declaring that it recognized them " as agents accordingly, and earnestly commends their agency to the confidence and liberality of the church." The association then applied itself actively to the work of raising the requisite sum. Contributions were made to it from time to time until 1883, when the total amount which it had received, together with the interest thereon, amounted to upwards of $25,000. In the meantime the professorship first considered had been endowed by an individual, and that professorship, with the consent of both parties, was abandoned, and another, " to be known as the Alumni Professorship of the Evidences of Revealed Religion," substituted in its place. In 1883, the fund held by the association was deemed sufficient by both parties to accomplish the desired object, and at its annual meeting, held in May of that year, the association offered the fund to the trustees of the defendant upon certain prescribed conditions, which the defendant agreed to. A few days later the alumni association transferred the fund, then amounting to $25,476.85, to the defendant, which the defendant formally accepted upon the terms offered, and amended its statutes to provide for the professorship thus

created. The following are the terms and conditions upon which this fund was offered and accepted by the defendant:

" 1. That the professorship be designated as the Alumni Professorship of the Evidences of Revealed Religion.

" 2. That such professorship shall be tenable for a period of three years, at or before the expiration of which term, or upon any other avoidance of the office, some other person than the retiring professor shall be nominated and elected.

" 3. That the duties of the professorship shall be limited to the delivery of lectures, extending over a period of three months in each year, the professor not being required to be resident, and not to be a member of the faculty.

" 4. That the right of nomination, on the expiration of the term of the professor, or other occurrence of a vacancy, shall forever belong to the associate alumni and be exercised by them according to such rules as may be from time to time adopted by them.

" 5. That the entire income of the endowment and of such additions as may in future be made to it shall be paid to the professor, or, in case of a vacancy, added to the endowment, provided that in case of a vacancy the standing committee may, with the consent of the associate alumni, or of their executive committee, appoint an acting professor, and assign to him the whole or a part of the income of the endowment as a compensation for his services.

" 6. That a statement of the amount of the fund, its investments and disposition of its income, be annually furnished to the associate alumni by the standing committee of the seminary.

" 7. That these conditions may, at any time, be altered by the joint action of the trustees of the seminary and of the associate alumni."

In May, 1884, Dr. Dean was nominated by the association to be the first incumbent of the professorship thus endowed, and he was unanimously elected by the defendant for a term of three years. During Dr. Dean's term, however, the conditions imposed by the association became irksome to the defendant, and it thereupon entered into negotiations with the association to secure, if possible, its consent to the modification of the conditions. For this purpose a committee was appointed by the defendant, and a committee also appointed by the association. Various conferences took place

between the committees, but finally they agreed upon a modification which they submitted to the respective bodies they represented, in the form of a joint report. The modification they represented was that, at the expiration of the then incumbent, the professorship should become a regular professorship. The report also urged the association to resume its work of soliciting further subscriptions, to the end that the fund might be increased to the sum of $50,000, which would be sufficient to maintain a regular professorship. This report was satisfactory to the defendant, but not to the association, and it never adopted or approved of it. It directed that the consideration of it be " postponed until the next meeting of the alumni association." This disposition of the report was due to the fact that no action had been taken by the defendant on the nomination made by the association, the year before, of Dr. Hopkins to succeed Dr. Dean. Shortly thereafter the defendant acted upon the nomination of Dr. Hopkins and he was rejected, and the association then nominated Dr. Cady, and in October, 1890, he was elected by the trustees of the defendant.

At its annual meeting in 1891 the alumni association passed a resolution modifying, if the defendant concurred, the conditions attached to the professorship fund, to the extent of making the incumbent eligible for re-election. This action of the association was communicated to the defendant, but it took no action in the matter, except to refer the consideration of the resolution to its standing committee. The year following the association nominated for the professorship Dr. Cady, if the defendant consented to the modification of the conditions attached to the office proposed by the association the year before, and, if it did not consent to such modification, then it nominated Dr. Dix. The defendant then, for the first time, refused to act upon the nomination of a temporary professor, upon the ground that the conditions attached to the office were modified in 1888 so as to create a permanent professorship. It then requested the association to nominate some person for permanent professor, which the association declined to do. The defendant then directed that the income from the fund be accumulated and added to the principal until the association should nominate a permanent professor. This is the situation at the present time.

The alumni association, at its annual meeting in June, 1889, directed a committee then appointed for the purpose to take the necessary steps to incorporate the alumni association, and in obedience to that direction the plaintiff was incorporated in November following under the same name that the association had theretofore borne.    Immediately following the incorporation the trustees named in the certificate of incorporation met and organized by the election of officers, and then proceeded formally to elect to membership in the corporation, by name and individually, every member of the alumni association who was in good standing at the time of the incorporation, and the following year all persons who were members of the alumni association at the time of the filing of the articles of incorporation were formally declared members of the plaintiff.

The plaintiff has instituted these proceedings to procure a judgment and a decree of this court :    (1)  Declaring the defendant's conduct, with reference to the tenure of this professorship, to be a breach of trust ; and (2) directing the defendant to take action upon a nomination made by plaintiff, now pending, and if it fails to do so within the time fixed, that it surrender and deliver to the plaintiff the trust fund.

The proceeding is resisted by the defendant mainly upon three grounds : (1) That there has been no breach of trust, because the condition imposed by the alumni association as to the election of a professor for only three years was modified in 1888, and in place thereof a regular professorship substituted, and the delay in filling that position is due entirely to the failure of the plaintiff to make a nomination ; (2) that the plaintiff has no interest in the fund ; (3) that the plaintiff did not succeed to the rights of the unincorporated association, and, therefore, is not the real party in interest.

*W. H. Rand, Jr.*, for the plaintiff.

*W. H. Harris*, for the defendant.

McLAUGHLIN, J. :

The fund in question was offered to the defendant by the alumni association upon certain conditions, and it was accepted by the defendant "upon the conditions" imposed.   A valid trust was thereby created, and the defendant, as a trustee, thereupon became

obligated, both legally and morally, to honestly and faithfully use and apply the fund and income therefrom according to the conditions imposed. Those conditions, so far as the same are in dispute, have never been changed, waived or modified by the alumni association or this plaintiff, its successors in interest. It is true some action was taken by both parties in 1888 towards securing a modification of the conditions, but nothing definite was accomplished. The committee appointed by the association, acting in connection with the committee appointed by the defendant, made a joint report, in which a change was recommended, but the association did not adopt the report or assent to the proposed change. This the defendant understood, because the following year its trustees passed a resolution which recited that the proposed change "not having been officially ratified by the association," should not be considered in force. And one year later it acted upon a nomination made by the alumni association under the original conditions, by electing Dr. Cady for a period of three years.

But it is urged by the defendant's counsel that the alumni association never had any interest in or to this fund ; that the fund was derived from contributions made by individuals for the purpose of promoting a specific part of the defendant's work, and that, therefore, the defendant was entitled to take, hold, use and apply the fund and income therefrom, to this work irrespective of the wishes of the association ; that there was no consideration for the limitation imposed on the exercise of this right by the defendant ; that the fund did not belong to the association, and that, therefore, it parted with nothing on the faith of the defendant's agreement or its assent to the conditions imposed when the fund was transferred. We are at a loss to understand how the defendant could believe or hope that its contentions in this respect would receive the sanction of any court. Honesty and fair dealing requires, when one person has received property from another, under an agreement that he will do something with it, that he should do as he agreed or else return the property to the one from whom he received it. The fund was offered to defendant by the association on certain conditions ; the defendant, in order that it might receive the fund, assented to those conditions and agreed to be bound by them. It cannot now be heard to say that the association had no title to or interest in this

fund.   If it desired to make such claim, it should have done so when the fund was offered, and not after it had obtained possession of it. But there is no force in the contentions of the defendant in this respect, as a reference to the history of the fund will show.   The first mention we find of this fund in the record before us is June, 1836, when the association appointed a committee to consider the advisability of attempting to establish a permanent fund to endow one of the professorships then unendowed.   The establishment of such fund was thereafter urged by defendant, and a committee was appointed by it to aid and encourage the association in their proposed undertaking.   In June, 1839, the trustees of the defendant, in response to a communication from the association in reference to raising the fund, passed a resolution, upon the language of which the defendant now lays great stress as determining the true relations of the two bodies.   The words in the resolution, which are considered by defendant as important, are:   "This board   *   *   *   hereby recognizes them as agents accordingly, and earnestly commends their agency to the confidence and liberality of the church."   Standing alone these words might possibly import or be susceptible of the meaning urged by defendant's counsel, that the association simply acted as agents of the defendant; but when they are considered in connection with the request of the association, which prompted and called out the resolution in which the words are used, it becomes plain that no such inference can be made from them.   The association asked "that the board of trustees be requested to give their sanction" to the work of procuring funds for the endowment, and in response to this request a resolution was passed which contained the words quoted.   Under all the facts, we do not think these words are entitled to the force contended for by defendant, or, indeed, to any force in determining the title of the fund.   And if we were disposed to adopt another view, the defendant's own acts would prevent our doing so.   As early as 1841 the defendant recognized the right of the association to possess and control the fund, because it then surrendered to the association, upon its demand a sum contributed, which had been paid directly to the defendant.   In addition to this, for many years a portion of the fund was from time to time loaned to the defendant by the association, and on such loans the defendant paid interest.   These acts are

inconsistent with a claim of ownership. But in addition to this, we think the acceptance by the defendant of this fund upon the conditions imposed by the association was a recognition of ownership in the association, which the defendant cannot be permitted to deny. If the defendant at that time had raised the question, a judicial determination of the rights of the parties could have been had before the transfer actually took place. The defendant, however, having secured the possession by assenting to the conditions proposed, is estopped from denying the association's title. Thus, Bigelow on Estoppel (4th ed. p. 661) says: "Indeed, it may now be broadly said that when one *sui juris* induces another to contract lawfully with him, or to change his position under circumstances which at the time would justify a man of care and prudence in acting as was done, the person inducing such action, and taking and retaining the benefit of it, can neither in whole nor in part repudiate the effect of his conduct."

It may be said that it is for the best interest of the seminary that the conditions imposed by the association should be changed, or that some modifications should be made in respect to them, but that is a question not for us to consider. The question for us to determine is solely whether the defendant has complied with the conditions prescribed by the donors of the fund, and to which it agreed when it received the same. In this connection the language used by the Supreme Court of the United States (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518) is quite pertinent. "This" (the proposed change) "may be for the advantage of this college in particular, and may be for the advantage of literature in general, but it is not according to the will of the donors, and is subversive of that contract on the faith of which their property was given."

Finally, it is urged that the plaintiff did not succeed to the rights of the unincorporated association, and, therefore, it is not the real party in interest. After a careful examination of the steps taken by the unincorporated association antecedent to the incorporation of the plaintiff, as well as the subsequent recognition by the defendant of the plaintiff's right to control the fund, we have reached the conclusion that the plaintiff did succeed to all the rights of the voluntary association, certainly to the extent of maintaining this proceeding. The action taken by the unincorporated association was

sufficient of itself to transfer to the plaintiff, when incorporated, all its rights. At the annual meeting of the association in 1889 a committee, appointed for that purpose, was directed to take all necessary proceedings to incorporate the association, and, in obedience to this instruction, proceedings were taken which finally resulted in the incorporation of the plaintiff. This, of itself, was sufficient to vest in the plaintiff all the title and interest which the association had in or to the fund. (Bacon Ben. Soc. § 64; *Matter of St. Mary's Church,* 7 S. & R. 517; *Rudolph* v. *Southern Beneficial League,* 7 N. Y. Supp. 135; *Porter* v. *Robinson,* 30 Hun, 209; *Beardsley* v. *Johnson,* 121 N. Y. 224.) The resolution in favor of the incorporation was adopted at an annual meeting by an unanimous vote of all present, and, from that time to this, no member of the association has been heard to complain, or in any manner question what was then done. That the resolution thus passed empowered the committee then appointed to secure the incorporation of the association is clear, and it does not need the citation of any authorities to sustain the proposition.

We, therefore, conclude that when this fund was offered to the defendant a trust was created, which the defendant has violated by refusing to apply and use the fund according to the terms upon which it was offered, and to which it assented when it received the same; and that, in view of the peculiar provisions of the agreement, and the fact that it comes before us on a submission, this court does not deem it practicable to direct a specific performance, but, instead, it remits the parties to their original positions by directing that the defendant pay over and deliver to the plaintiff the fund which it received in 1883, together with any and all accumulations of interest thereon. Judgment to that effect should be directed against the defendant and in favor of the plaintiff, with costs.

VAN BRUNT, P. J., BARRETT, RUMSEY and INGRAHAM, JJ., concurred.

Judgment ordered for plaintiff, as directed in opinion, with costs.