(60 App. Div. 327.)

## TABERNACLE BAPTIST CHURCH v. FIFTH AVE. BAPTIST CHURCH OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department.    April 29, 1901.)

1. GIFT SUBJECT TO TRUST—AGREEMENT—TITLE OF TRUSTEE—WHEN VESTING—OWNERSHIP—SUSPENSION.

By the terms of an agreement, certain property was given to a religious corporation, subject to a trust to pay the income to a second religious corporation, for use by it in mission work for the term of 10 years; then, if such corporation should be designated during such term by certain persons named in the agreement, at the expiration of the first period of 10 years the income was to be paid to the beneficiary designated for a second period, not exceeding a further term of 10 years; and at the expiration of such term, or in default of designation, the net annual income of such fund was to be used forever by the corporation first named in its mission work. *Held*, that the legal effect of the agreement was to immediately pass the absolute title to the property to the first corporation, subject only to payment of the income to the beneficiary for the term and on the conditions specified, and hence there was no violation of Laws 1897, c. 417, § 2, forbidding the suspension of the absolute ownership of personal property for more than two lives in being.

2. SAME—AGREEMENT—VALIDITY—ESTOPPEL.

Where a religious corporation, receiving a gift of bonds, accepted, covenanted, and agreed to faithfully carry out the provisions of an agreement whereby it obligated itself to pay to a beneficiary the income thereof for a specified time and on certain conditions, it was estopped from attacking the validity of the agreement.

3. SAME—FORFEITURE—EXTENT.

Where property is bestowed in trust, the income to be used by a beneficiary in mission work, but only at a specified location, and the beneficiary was compelled to abandon such location, the forfeiture of all rights to the income subsequently accruing did not extend to what had accrued prior to the enforced abandonment.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from special term, New York county.

Action for an accounting by the Tabernacle Baptist Church against the Fifth Avenue Baptist Church of New York City. From a judgment of the special term in favor of plaintiff (66 N. Y. Supp. 691), defendant appeals.    Affirmed.

This action was brought to recover so much of the income of a trust fund, of which the defendant is alleged to be the trustee, as accrued from May 31, 1893, down to the date of the beginning of the action, namely, November 26, 1898.    In 1892 the Tabernacle Baptist Church, then a flourishing church, doing both religious and institutional or benevolent work, was located at the premises Nos. 162 to 168 Second avenue, in the city of New York.    The building consisted of a parish house and a large church edifice, suitable for a congregation of large size.    The church was not carrying on work at any point on Second avenue between Tenth and Eleventh streets, except in these buildings. On the 29th of April, 1892, Mr. John D. Rockefeller executed an instrument dated the 1st day of December, 1891, and procured its execution by the corporation of the Fifth Avenue Baptist Church, the defendant, which was thereupon delivered to the latter, and which is as follows:

"Agreement made this first day of December, one thousand eight hundred and ninety-one, between John D. Rockefeller, party of the first part, and Fifth Avenue Baptist Church of New York City, a corporation organized under the laws of the state of New York, hereinafter called the 'Fifth Avenue Church,' party of the second part.    Mr. Rockefeller hereby gives and transfers to the Fifth Avenue Church fifty consolidated mortgage bonds of the Northern Pacific Railroad Company, for one thousand dollars each, bearing interest at

the rate of five per centum per annum, payable June and December first, principal and interest payable in gold; principal due 1989; together with interest coupons thereon carrying interest from December 1st, 1891; to be held by the Fifth Avenue Church upon the following trusts: (1) During the continuance of its ownership of the said bonds, to leave the same on deposit for safe-keeping with the Farmers' Loan & Trust Company of the City of New York. (2) During the term of ten years from December 1, 1891, to pay over the income received from the said bonds, less the charge of the said trust company for safe-keeping, or, in case of a change of investment of the said fund, to pay over the net income of the fund, semiannually, to the Tabernacle Baptist Church of the City of New York, a corporation organized under the laws of the state of New York, and hereinafter called the 'Tabernacle Church,' for use by the Tabernacle Church only for its work at Second avenue, between Tenth and Eleventh streets, in the city of New York. (3) If during the said term of ten years Mr. Rockefeller's wife, Laura C. Rockefeller, and his son, John D. Rockefeller, Jr., or the survivor of them, shall, during life, by written communication to the Fifth Avenue Church, designate the beneficiary of the income of the fund for a second term of ten years, or, at their election, for any single shorter period of time, then to pay over the net income of the fund, semiannually, to the beneficiary so named; the said income to be used only for Baptist city mission work in the city of New York. If the said beneficiary shall be the Tabernacle Baptist Church, the income shall be used only for its work at Second avenue aforesaid. (4) Upon the expiration of said second term, or in default of a designation as above provided, then forever after to expend in every year the net annual income of the said fund for such Baptist city mission work in the city of New York as may be lawfully carried on by the Fifth Avenue Church. (5) If during the two terms above mentioned the Fifth Avenue Church shall become satisfied that the income paid to the beneficiary thereof for the time being is not used in accordance with the terms of this instrument, or, further, while the Tabernacle Church is the beneficiary, if that church ceases to be a member of the Southern New York Baptist Association, or its successors, in either event the Fifth Avenue Church may, in its discretion, thenceforth discontinue payments of income to the then beneficiary, and such discontinuance shall be taken as ending the term then current. (6) The Fifth Avenue Church shall have power, in its discretion, to change, from time to time, the investment of the said fund to any kind of personal property, including, in its discretion, mortgages on leasehold or other property, or the purchase of leasehold property itself. The Fifth Avenue Church hereby accepts the said trust upon the terms hereinbefore set forth, and hereby covenants with Mr. Rockefeller, his executors, administrators, and assigns, to faithfully carry out the same. In witness whereof, the parties hereto have executed this agreement in duplicate the day and year first above written.

    "[Signed]               John D. Rockefeller.  [Seal.]
"Witness as to signature of John D. Rockefeller:  D. I. Carroll.
    "[Signed]        Trustees of Fifth Avenue Baptist Church,
                      "By J. A. Bostwick, President,
    "[Signed]             George H. Hansell, Secy. and Treas."

The plaintiff and defendant are religious corporations, organized under the act of 1813, entitled "An act to provide for the incorporation of religious societies," and the act or acts amendatory thereof. It is conceded that on or about April 29, 1892, Mr. Rockefeller gave and transferred to the defendants the mortgage bonds of the Northern Pacific Railroad Company referred to in the agreement, and notified the Tabernacle Baptist Church on or about the same date that he had so transferred them; that the defendant received the income accruing on the bonds from and including December 1, 1891, to and including May 31, 1893, and paid the same to the plaintiff, less the charges of the Farmers' Loan & Trust Company, with which these bonds were left on deposit for safe-keeping, pursuant to the terms of the agreement; that these 50 bonds paid their last interest on June 1, 1893, and on August 15, 1893, the Northern Pacific Railroad Company went into the hands of a receiver; that, under and pursuant to a plan of reorganization of the road, the defendant, in or about the month of March, 1896, deposited the bonds in question, with the unpaid

coupons thereto attached, and there accrued and was payable on or before January 1, 1897, a certain sum for the due and unpaid interest thereon, and which was paid to and received by the defendant,—the sum of $750 in cash, and $8,143.22, par value, of general lien, in 3 per cent. bonds of the company, which at the time of the trial of this action was of the cash value of $5,455.96, and being in the aggregate $6,205.96, which, together with the interest upon said amounts, which amounted to $917.71, makes a total of $7,123.67. In December, 1896, the plaintiff ceased to conduct services or work of any kind at the premises Nos. 162 to 168 Second avenue, and in December, 1897, it began to occupy two or three rooms in the parish house at No. 162, where it conducted some services. In June, 1899, plaintiff was removed from or vacated these premises, and at the trial of the action was not carrying on its church work on Second avenue between Tenth and Eleventh streets. At the time of the execution of the agreement by Mr. Rockefeller the plaintiff was a member of the Southern New York Baptist Association, but on September 26, 1898, resigned its membership. This action was commenced on November 26, 1898. The plaintiff had judgment for the interest accrued, and which the defendant has received upon the 50 consolidated mortgage bonds of the railroad company for the defaulted interest or income thereon from June 1, 1893, to December 19, 1896, the sum of which was stipulated and agreed upon, and that a finding to that effect might be made by the court, and from such judgment the appeal herein is taken.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Geo. Welwood Murray, for appellant.

Benjamin Scharps, for respondent.

HATCH, J. There is very little dispute as to the facts in this case, and, as we view it, none whatever as to the facts essential to the determination of the questions presented. It is undisputed that the Fifth Avenue Baptist Church, the defendant, executed the contract in question; that it took and received the mortgage bonds therein mentioned; that for a time it performed the agreement by receiving and collecting the income and paying it over to the plaintiff, as therein provided; and that at the time this action was commenced there had accrued and the defendant had received for the defaulted interest or income upon the bonds the sum of $7,123.67, which it had refused to pay over to the plaintiff.

The first defense is that so much of the gift as was for the benefit of the plaintiff was void at its inception, on the ground that it violates the provision of the statute which forbids the suspension of the absolute ownership of personal property for more than two lives in being. Section 2, c. 417, Laws 1897, formerly 1 Rev. St. p. 773, § 1. There is no question as to the capacity of either of the parties to acquire and hold personal property and the income thereof for the purposes of their organization. Both are incorporated under chapter 60 of the Revised Laws of 1813, which was in force when the gift was made, but was repealed by the Laws of 1895 (chapter 723). Section 4 of the act of 1813 provides:

"The trustees of every church, congregation or society hereinbefore mentioned and their successors * * * are hereby authorized and empowered to take into their possession and custody all the temporalities belonging to such church, congregation or society whether the same consist of real or personal estate and whether the same shall have been given, granted or devised directly to such church, congregation or society or to any other person

for their use * * * and also to purchase and hold other real and personal estate * * * for use of such church, congregation or society or other pious uses."

A religious corporation, therefore, is authorized by this statute to take possession of personal property that has been given, granted, or devised directly to it, or to any other person for its use, and to hold the same for its use, or to other pious uses. This statute does not authorize a corporation created thereby to take or hold property in trust for other corporations or for individuals. Chamberlain v. Chamberlain, 3 Lans. 348; Id., 43 N. Y. 424; In re Griffin's Will, 45 App. Div. 102, 61 N. Y. Supp. 639; In re Williams' Estate, 1 Misc. Rep. 440, 23 N. Y. Supp. 150; Adams v. Perry, 43 N. Y. 487; Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839; Read v. Williams, 125 N. Y. 560, 26 N. E. 730. It must be borne in mind, however, that this agreement relates solely to personal property, and that the legislature has not attempted to define the purposes for which express trusts in personal property may lawfully be created, as it has done in relation to trusts in real property. Trusts of personal property stand, as they did at common law, subject only to the statutory restriction against the suspension of ownership for more than two lives in being, and subjecting the limitation of future and contingent interests in personal property to the rules prescribed in relation to like estates in real property. Gilman v. Reddington, 24 N. Y. 12, 13. The only change in the statutes since the decision of this case at all relating to this subject is the provision as to direction for accumulation of income, which does not affect this question.

Does the instrument in question violate the statutory rule forbidding the suspension of the absolute ownership of personal property? We think not, but that the legal effect of the agreement was to immediately pass the absolute title to the mortgage bonds to the Fifth Avenue Baptist Church, subject only to the payment of the income to the plaintiff for the term specified, and upon the conditions expressed therein. The language used seems to us to admit of no other construction. That an absolute present gift to the Fifth Avenue Church was intended is clear from the provision that, "during the continuance of its ownership of the said bonds," it should leave the same on deposit, etc.; and the provisions of paragraph 4, by the language employed,—"Upon the expiration of said second term, or in default of a designation as above provided, then forever after to expend in every year the net annual income of the said fund for such Baptist city mission work in the city of New York as may be lawfully carried on by the Fifth Avenue Church,"—serve to emphasize the fact. No other act or thing is required to vest the absolute title to the property in the defendant. The instrument is, in form, sufficient to convey the absolute title. It is signed, sealed, and witnessed. It very clearly expresses the intent to make a gift absolute and immediate. It has been repeatedly held that an unqualified gift by will of the rents or income of real estate is, in legal effect, a devise of the property itself. Mott v. Richtmyer, 57 N. Y. 49, 60; Jennings v. Conboy, 73 N. Y. 230; Monarque v. Monarque, 80 N. Y. 320, 324; Bailey v. Bailey, 97 N. Y. 460, 470, 471. The same rule

must apply to personal property. Indeed, it is held in Mott v. Richt-myer, supra, that "a grant of the use and income of real or personal estate, forever, carries the fee of the land, and the personal estate itself." Page 60, and cases there cited. As we construe this instrument, it falls within the class of so-called trusts arising out of gifts and bequests to charitable and religious corporations for the promotion of some corporate purpose, which have been held not to be trusts, in the legal sense. Such a gift does not create a trust in any such sense as that term is applied to property. The donor may lawfully restrain the use of the donee to the income, so as to preserve the principal from dissipation; the gift being to promote some of its chartered purposes. In an early case in this state it was held that:

"Where property is devised or granted to a corporation partly for its own use and partly for the use of others, the right of the corporation to take and hold the property for its own use carries with it, as a necessary incident, the power to execute that part of the trust which relates to others." In re Howe, 1 Paige, 213.

This case was very like the one at bar. In the present case the corporation is directed to use the income in accordance with the law of its creation, for its own purposes, except as to the income for a limited period; and the direction as to the manner of its use, within that law, does not affect its ownership, nor make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself. Schouler, Wills (3d Ed.) 610; Wetmore v. Parker, 52 N. Y. 459; Currin v. Fanning, 13 Hun, 458. The latter case involved the question of a gift by bequest to an asylum, and the question here presented was passed upon. It was contended that the gift violated the statute of perpetuities, because a direction to invest the principal took away the jus disponendi, without which there cannot be absolute ownership. The court held that this principle did not apply, and said:

"No mortmain law, restrictive as they have sometimes been, ever prevented the donors from making their gifts in such terms as would preserve the principal from dissipation. It does not create a trust in any such sense as that term is applied to property. The corporation uses the property, in accordance with the law of its creation, for its own purposes; and the dictation of the manner of its use, within the law, by the donor, does not affect the ownership or make it a trustee. A person may transform himself into a trustee for another, but he cannot be a trustee for himself." Page 459.

Woodward v. James, 115 N. Y. 346, 357, 22 N. E. 150; Bird v. Merklee, 144 N. Y. 544, 39 N. E. 645, 27 L. R. A. 423; Holland v. Alcock, 108 N. Y. 312, 16 N. E. 305; Cottman v. Grace, 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145; Holmes v. Mead, 52 N. Y. 332.

One of the authorities seemingly most relied upon by the appellant is the case of Chamberlain v. Chamberlain, 3 Lans. 348, but on examination the case is found not to support its contention. That case is not in conflict with the views expressed herein, nor with the authorities cited upon the point in question. On the contrary, the court, in disposing of the bequest to the Chamberlain Institute (page 369), distinctly recognizes the doctrine of those cases, and supports the rule we have enunciated. It is true that the bequest there in question was upheld on another ground, but the dis-

cussion shows that, if it had been necessary, it would have been sustained upon the ground that it did not create a trust, nor suspend the absolute ownership of the money bequeathed. The decision was reversed by the court of appeals (43 N. Y. 424), but the question of the bequest to the Chamberlain Institute was not involved in the reversal.

If we are right in the construction thus placed upon the instrument in question, it was and is a valid agreement, which the plaintiff has the right to enforce. But if it were not so, the defendant cannot attack it on that ground. Having accepted, covenanted, and agreed to faithfully carry out the provisions of the agreement, the defendant is estopped from attacking its validity. "Acceptance of the trust estops the trustee from denying the title of the person for whom he holds." Perry, Trusts (5th Ed.) § 260. "A trustee who is in default cannot claim, as against his cestui que trust, any beneficial interest in the trust estate until his default has been made good." Doering v. Doering, 42 Ch. Div. 203; Harbin v. Bell, 54 Ala. 389; Saunders v. Richard, 35 Fla. 28, 42, 16 South. 679; Chaplin, Exp. Trusts, 161; Jones v. Butler, 30 Barb. 641. It would be an anomaly to say that the defendant could accept the performance of this agreement, enter upon the discharge of the trust imposed by its agreement, by paying over the income, and then take advantage of an alleged legal impediment to reap the whole benefit of the gift to itself, to the exclusion of the other beneficiary. It can have no standing, in principle, to do this, and all considerations of equity forbid it. Nor is the position of the defendant aided by the assignment from the donor, Mr. Rockefeller, offered in evidence, and excluded rightly, we think, by the court. This assignment added nothing to the title of defendant to the bonds. As already seen, its title was already absolute; and this assignment, having been procured after the commencement of this action, could take away no right of the plaintiff, if the defendant had not before acquired title.

Having thus disposed of the legal questions involved, we come to the discussion of the only remaining question which we regard as material to the determination of the appeal. The defendant resisted payment of the plaintiff's alleged claim upon the further ground that as the plaintiff is now disqualified, by the terms and conditions attached to the gift, from receiving income for the future, such disqualification also debars it from its right to accrued income (assuming it ever to have had that right), for it cannot apply the income in the way prescribed by the donor. The agreement provides that the income of the bonds should be paid over to the Tabernacle Church "only for its work at Second avenue, between Tenth and Eleventh streets, in the city of New York," and that "if the church ceases to be a member of the Southern New York Baptist Association, or its successors, in either event the Fifth Avenue Church may, in its discretion, thenceforth discontinue payments of income to the then beneficiary, and such discontinuance shall be taken as ending the term then current." The trial court has found, upon practically undisputed evidence, that the plaintiff occupied all of its premises on Second avenue and conducted its work there during the period

from December 1, 1891, the date of the gift, and prior thereto, and up to on or about December 19, 1896; that the plaintiff did not at any time during that period of time cease to occupy its said premises and to conduct its work there.   These facts are abundantly supported by the testimony.   It is further found that the plaintiff ceased to be a member of the Southern New York Baptist Association on or about October 11, 1898, which is conceded.   There is no proof that the plaintiff has ever ceased to be a church, or to do church work, or to do Baptist city mission work; and the trial court found that for a long time prior to December 1, 1891, and ever since that time, the plaintiff has been, and still is, a church.   It further appears that the plaintiff conducted its services and church work from some time in December, 1897, to June, 1899, in the parish house, which was a part of its premises on Second avenue.   Upon the trial counsel for plaintiff waived all right to an accounting for funds received after the commencement of the action, November 26, 1898; and the recovery had covered only the period from June 1, 1893, the date of the default by the railroad company, to December 19, 1896, when plaintiff ceased to conduct its services and carry on its work at Nos. 162 to 168 Second avenue in the same manner and under the same conditions as when the agreement was executed.   Assuming, then, as seems to have been assumed at the trial, that by reason of these facts the plaintiff forfeited its rights to all income after December 19, 1896, does it follow, as a necessary consequence of such forfeiture, that it has also lost the right to recover the income which concededly had accrued up to that time, and which had been paid over to the defendant, but had not been received by the plaintiff?   We think not, clearly.   The statement of the proposition is its own refutation.   This is an action in equity, and we know of no equitable principle which works a result so inequitable.   Counsel for appellant first contends that the gift is void in law, as a trust, and then, in the same breath, urges that it is charged with a "certain sort of trust," which, because of a suspicion that the gift may be used for purposes foreign to the intention of the donor, renders it necessary to apply so harsh a rule to deprive plaintiff of what it seems to us it is in equity clearly entitled to receive.   Even the law looks with disfavor upon a forfeiture, and it is never favored in equity.

It is urged that there is no claim that the plaintiff has incurred obligations in its work at Second avenue in anticipation of its right to the income of this fund.   But this proposition is without force. Non constat that it has not incurred such obligations.   It does appear that, during the period for which recovery is had, all the conditions were complied with which entitled the plaintiff to receive this income.   If defendant relied upon such facts as are now urged to defeat the claim, the onus was upon it to show them.   Presumptively, the plaintiff was entitled to recover, upon the facts alleged and proved by it.   The cases cited by appellant upon this question are not in point, and furnish no authority against our conclusion. So far as it goes, the case of Associate Alumni v. General Theological Seminary, 26 App. Div. 144, 49 N. Y. Supp. 745, is a holding

in favor of our view. It was there held that a trust was created, which the defendant had violated by refusing to apply and use the fund according to the terms upon which it was offered, and to which it assented when it received the same, and the plaintiff had judgment. The rule quoted from Locke v. Trust Co., 140 N. Y. 135, 35 N. E. 578, "that trusts end when their intended purposes are accomplished and when they are no longer necessary to effect the designed results," has no application to this question. That rule was applied by the trial court in limiting the recovery to the sum accrued and received by the defendant during the period in which the plaintiff complied with the conditions of the gift. It is no authority for the proposition that plaintiff may not now recover the income which accrued, and which it might have recovered during that period. Especially is this so in view of the fact that the amount recovered is the defaulted interest, none of which had been paid or received by the defendant until June, 1896, and that plaintiff's recovery was limited to the period ending December 19, 1896. Would it have been possible for plaintiff to secure a recovery against defendant before it had received the interest? Or was the plaintiff bound to. sue for each installment as it fell due? Suppose, as an illustration, a trust to pay income annually to a minor until he arrives at majority, upon certain conditions; that the conditions were complied with, but for the last four years of the minority the trustee failed to pay the income,—would the cestui que trust, after arriving at majority, be prevented from recovering because the trust had ended, and its "intended purposes had been accomplished"? No one would so contend, nor is there ground for such contention here. The considerations urged furnish no defense to the cause of action.

It seems to us that the plaintiff has fully established its right to the income in question, and that the judgment should be affirmed, with costs.

RUMSEY and O'BRIEN, JJ., concur.

INGRAHAM, J. I do not concur in the affirmance of this judgment. Assuming that the transfer of these bonds to the defendant was valid, that the title thereof vested in the defendant, and that upon the acceptance thereof it was bound to appropriate the income of the bonds as therein required, it seems to me entirely clear that the plaintiff had no right to the specific income for which judgment has been given it. This was a gift of a large sum of money for charitable purposes. Mr. Rockefeller, the donor, was under no obligations to provide money for the continuance of the church work, and it is his intention in making the gift that we are to ascertain and carry into effect. It was not his intention that these bonds, nor the income realized from them, should be used for the personal or individual purposes of anybody, but the plain intention was to provide an income to be used for church purposes. To carry out that intention, he selected as donee the defendant, a religious corporation engaged in church work in the city of New York, and then provided that the income realized from the fund should during a stated

period be paid over to another religious corporation of the same denomination. The provisions of the instrument were clearly intended to provide an income to be applied to the work which the plaintiff was then doing in the particular locality specified. This appears from the whole instrument. It provides that the defendant "during the term of ten years from December 1, 1891, should pay over the incomes received from the said bonds, * * * semiannually, to the Tabernacle Baptist Church of the City of New York, a corporation organized under the laws of the state of New York, and hereinafter called the 'Tabernacle Church,' for use by the Tabernacle Church only for its work at Second avenue, between Tenth and Eleventh streets, in the city of New York." Here is a distinct limitation of the use to be made of this income, which plaintiff declares the intention of the donor in making the gift. Thus, after making provision for the extension of this term, the instrument continues:

"If, during the terms above mentioned, the Fifth Avenue Church shall become satisfied that the income paid to the beneficiary thereof for the time being is not used in accordance with the terms of this instrument, * * * the Fifth Avenue Church may, in its discretion, thenceforth discontinue payments of income to the then beneficiary, and such discontinuance shall be taken as ending the term then current."

It would seem that by these provisions the donor endeavored to prevent this money from being used in any way except as was expressly provided. The injunction was that, when the income was paid to the plaintiff, it was to be used only for its work on Second avenue, between Tenth and Eleventh streets, in the city of New York; and, if the defendant should become satisfied that the income paid to the beneficiary for the time being was not used for that purpose, or in accordance with terms of the instrument, then the defendant, in its discretion, should discontinue payment of the income. There was thus an obligation laid upon the plaintiff to use the income for this particular work, and a duty imposed upon the defendant to see to it that the income was so used; and, if it should become satisfied that the income was not so used, it was to discontinue payment of the income. It is true that this duty imposed upon the defendant must be exercised in good faith, and there must be facts that would justify the defendant in the conclusion that the income would not be used for the specific purpose provided by the agreement; but if the defendant, in good faith, and upon sufficient foundation, found that this money was not to be used for the specific purpose, it would be not only justified in refusing to pay the income over to the plaintiff, but bound to refuse, and the plaintiff would not be entitled to such income. Now, what was the situation at the time the defendant received this income? For it was the conditions then existing which the defendant was bound to consider in determining whether or not the income, if it was actually paid to the plaintiff, would be applied as required by the instrument. This instrument was dated December 1, 1891, and it seems to have been executed about that time. The income received on these bonds was paid to the defendant from

December 1, 1891, to June 1, 1893, and paid over by the defendant to the plaintiff. Subsequent to June 1, 1893, the railway company, the obligor, defaulted in the payment of the interest, and such default continued until June 23, 1896, when certain cash and securities were paid in lieu of the interest for this period; and this cash, amounting to $7,123.67, was paid to the defendant by the obligor in lieu of interest upon the bonds from June 1, 1893, until June 23, 1896. It cannot be claimed that the defendant was liable to pay the income to the plaintiff until it had been received, and it was not until the income was actually received and in the hands of the defendant that the question could arise whether or not the money, if paid to plaintiff, would be used for the purposes specified in the agreement. At the time that this instrument was executed and the bonds delivered, the plaintiff was a religious corporation occupying an edifice on Second avenue, between Tenth and Eleventh streets, and carrying on church work in that locality. There was a mortgage upon this church property, and prior to January, 1896, the corporation had got into difficulties, the nature of which it is not necessary to discuss; but in January, 1896, nearly six months before this payment was made, proceedings had been commenced to foreclose the mortgage, and in July, 1896, just after the time when this income was received by the defendant, judgment of foreclosure was entered, directing the sale of the church property, in pursuance of which judgment the property was sold; and after some litigation the possession of the church property was taken from the plaintiff. So the situation at the time that the defendant had to determine whether or not this income should be paid to the plaintiff was that an action to foreclose the mortgage was pending, a trial had been had, and just about the time that the interest was paid to the defendant a judgment of foreclosure was entered, directing the sale of the property occupied by the plaintiff in its church work. Under such circumstances, what was the duty of the defendant? It had undertaken to pay this money to the plaintiff corporation for use only for its work on Second avenue, between Tenth and Eleventh streets, in the city of New York, and it was to determine whether or not such income would be used for that work; and if, in good faith, it determined that this money would not be used in such work, it was then not to pay it. The continued occupation of the premises by the plaintiff was necessary to comply with the conditions of the instrument transferring these bonds. I think it clear that not only was the defendant justified under the circumstances in determining that the income would not be used in accordance with the terms of the instrument, namely, only for its work on Second avenue, between Tenth and Eleventh streets, in the city of New York, but that any other determination, under these facts, would have been a breach of duty, which would have been a violation of its obligation; but, at least, the defendant was justified in holding on to the money until it could ascertain from subsequent events whether or not the plaintiff would continue its church work at the place specified, and when it became evident that it would not so continue its work, and had lost the means of doing the work to

which the donor intended this income should be applied, as must have been apparent upon the sale of the property in the following December, 1896, when the plaintiff was ejected from the church edifice, this defendant was bound not to pay this money to the plaintiff. This action was not commenced until 1898, and until after the plaintiff had been ejected from the property and had lost all title to it, and after its work had ceased at the place named in the agreement. Certainly, when this action was commenced there was not the slightest justification for the claim that this income would be applied by the plaintiff to the purposes specified in the instrument, namely, the plaintiff's work on Second avenue, between Tenth and Eleventh streets, in the city of New York. It seems to me that to affirm this judgment would be to appropriate money to a use directly in violation of the expressed intention of the donor, and, under the form of law, to compel the defendant to violate its trust, and misappropriate the money paid to it for religious purposes. I think the judgment should be reversed.

VAN BRUNT, P. J., concurs.